[No. 13549.   In Bank. —September 10, 1890.]

A. B. PRESTON, RESPONDENT, v. CAROLINE KNAPP, EXECUTRIX, ETC., APPELLANT.

85  559
124  574

ESTATES OF DECEDENTS — ACTION TO RECOVER MONEY — SUBSTITUTION OF EXECUTRIX — JUDGMENT — APPEAL — MODIFICATION. — Upon the substitution of the executrix of the defendant as defendant in an action to recover money, which after trial resulted in a judgment for the plaintiff, the judgment should be made payable in due course of administration, and not otherwise; but an erroneous judgment against the executrix absolutely may be modified upon appeal so as to make it so payable.

ID. — PRESENTATION OF CLAIM — PLEADING — ADMISSION UPON TRIAL — APPEAL — OBJECTION FOR FIRST TIME. — It is too late to make an objection for the first time on appeal that the presentation of a claim against an estate and its rejection by the executrix were not alleged in the complaint, after substitution of the executrix, where it appears that no such objection was made in the court below, and that the defendant expressly admitted on the trial that the claim had been presented to the executrix in due time, and that she refused to act upon it, and made no objection on the ground that it was not presented in due form.

ID. — DEFENSE IN ABATEMENT — WAIVER. — The defense to a claim against an estate, that it had not been presented to and rejected by the executor or administrator before commencement of suit upon it, does not go to the merits of the claim, but is of the nature of a defense in abatement, which is presumed to be waived if not expressly made in the court of original jurisdiction.

SALE OF GOODS — PRINCIPAL AND AGENT — SALE BY AGENT — CREDIT TO PRINCIPAL — LIABILITY OF PURCHASER — APPEAL — REVIEW OF EVIDENCE. — In an action to recover for the price of goods sold and delivered by the plaintiff's assignor to the decedent, testimony of the plaintiff's assignor, that while in the employ of the original owner of the goods as teamster for the delivery of goods, he was authorized by such owner to sell part of his goods in payment of a debt due from his employer, and that he afterwards sold the goods sued for to the decedent on his own account, and that decedent said he would settle with him, is not sufficient to sustain a finding of a sale of the goods by the teamster upon his own account to the decedent, the witness not stating explicitly that he informed the decedent that he was selling the goods on his own account, and his testimony being vague, inconsistent, unreliable, and evasive as to the express promise of decedent, and in other particulars, and it appearing by other evidence that decedent had no notice that the teamster owned or claimed the goods, or that he was selling or delivering them on his own account, and that decedent credited them to the account of the employer of the teamster, and made no express promise to pay the teamster for the goods as the owner thereof. (PATERSON, J., dissenting.)

ID. — TITLE OF AGENT — AUTHORITY TO APPLY PROCEEDS OF SALE — SUIT BY AGENT. — The title to goods of the principal does not pass to the

agent, when there is no segregation or delivery of any particular goods to the agent as being his own; nor does a sale by the agent of the goods of the principal become a sale on his own account, so as to authorize him to sue the purchaser in his own name for goods sold and delivered, by reason of authority from the principal to make sales and apply the proceeds in payment of a debt due from the principal to the agent.

ID. — IMPLIED PROMISE OF PURCHASER FROM AGENT. — The only promise of a purchaser implied from a sale and delivery of goods by an agent, to whom the title of the goods has not passed, is, that the purchaser will pay the value of the goods to the owner of the goods delivered, and not to pay the owner's servant or agent who delivered them, and the agent cannot recover in his own name for the sale of the goods, without an express promise of the purchaser to pay to him the value of the goods.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The facts are stated in the opinion.

*F. W. Street*, and *E. G. Knapp*, for Appellant.

*F. D. & G. W. Nicol*, for Respondent.

VANCLIEF, C. — This action was commenced against Sewell Knapp, in his lifetime, to recover $493.81 for goods sold and delivered to him by I. N. Miller, the latter having assigned his demand to the plaintiff. After having answered, denying the sale and delivery of the goods and his indebtedness to Miller, Sewell Knapp died, and his executrix, Caroline Knapp, was regularly substituted as defendant, on motion of defendant's counsel. The case was tried by the court on the original pleadings, it being expressly admitted by the defendant on the trial that the claim had been presented to the executrix for allowance in due time, and that she had refused to act upon it. The trial resulted in a judgment for plaintiff for the sum demanded, against the executrix absolutely, and independently of "due course of administration." The appeal is from the judgment, and from an order denying defendant's motion for a new trial.

1. The judgment should have been made payable in

due course of administration, and not otherwise. This error, however, could be corrected by a modification of the judgment, without a new trial; but, as will appear, a new trial should be granted upon another ground.

2. Appellant's counsel contend that, inasmuch as the complaint was not amended after the substitution of the executrix, by adding thereto an averment that the claim had been regularly presented to and rejected by the executrix, it is insufficient to support the judgment. But as no such objection was made in the court below, and as defendant expressly admitted on the trial that the claim had been presented to the executrix in due time, and that she had refused to act upon it, and made no objection on the ground that it was not presented in due form, it is too late to make the objection that the presentation and rejection of the claim were not alleged in the complaint, for the first time, on this appeal. (*Hentsch* v. *Porter*, 10 Cal. 555; *Coleman* v. *Woodworth*, 28 Cal. 568; *Bank* v. *Howland*, 42 Cal. 130; *Drake* v. *Foster*, 52 Cal. 225.) The object of the statutory requirement of presentation and rejection of claims against estates, as a condition precedent to the commencement of suits upon them, is to save to estates of deceased persons the costs and expenses of useless suits, — suits to recover what would have been allowed and paid by the executor or administrator without suit. The merits of such claims do not depend in any degree upon their presentation and rejection before suit. The defense that a claim had not been presented and rejected before suit does not question either the validity or the maturity of the claim, but simply challenges the remedy by suit, on the ground that another remedy provided by law has priority, and should be exhausted before commencement of suit. In other words, that the demand, or some part thereof, should be disputed and rejected, in the mode prescribed by law, before the commencement of suit. For these reasons, it has been decided in the cases above cited that the de-

fense to a claim against an estate, that it had not been presented to and rejected by the executor or administrator before commencement of suit upon it, is of the nature of a defense in abatement, which is presumed. to be waived if not expressly made in the court of original jurisdiction, and that it will not be first heard and considered on appeal.

3. It is contended that the finding that Miller, plaintiff's assignor, sold and delivered the goods to Knapp, 'defendant's testator, is not justified by the evidence, and I think this point is well taken. The goods alleged to have been sold and delivered by Miller to Knapp consisted of wheat, flour, bran, and middlings, delivered at different times in 1886, viz., March 24th, April 7th, and May 8th, and are admitted to have been the property of G. W. Hale, unless he had sold them to Miller before they were delivered to Knapp. Plaintiff claims that Miller purchased the goods from Hale before the alleged sale and delivery to Knapp; but the defendant denies this, and contends that Knapp purchased the goods from Hale, and that Miller, as the agent and teamster of Hale, merely hauled and delivered them to Knapp for Hale. It appears that both Hale and Miller had running open accounts with Knapp during the time the goods were being delivered, and that Knapp credited the goods to Hale's account, on his books, at the times of delivery. It is admitted that, before and during the time the goods were being delivered to Knapp, Miller was in the employ of Hale as teamster, driving Hale's team, of which it appears that Knapp had notice. It also appears that the goods had been deposited and stored by Hale while he owned them in Tulloch's mill, at Knight's Ferry, and thence the greater part of them were hauled directly to Knapp's store, by Miller. But it appears that, by some means not disclosed, about one fifth part of the goods had been "left with Mr. Preston [presumably the plaintiff], in his warehouse at Jamestown," by whom, and

not by Miller, they were delivered to Knapp. This appears by the testimony of Miller and the copy of the account, exhibit C. As to his purchase of the goods from Hale, Miller testified: " I was working for G. W. Hale at the time I delivered this merchandise to Mr. Knapp. I became, while working for Mr. Hale, the owner of certain wheat, flour, and bran by transfer from Hale, who owed me $111, and he [Hale] had wheat and bran in Knight's Ferry, and he told me I could have it, and sell until I was clear of it. . . . . They were transferred to me in part payment of my claim against Hale for $111. . . . . Mr. Hale had this merchandise in Knight's Ferry. He was owing me $111, and he says: ' Now I want to pay you. Will you take that wheat, and sell it whenever you can, and take your pay out of it? ' And I said I would, and Knapp bought it, and said he would settle with me. . . . . Hale's agreement was for me to take the flour and sell it, and collect the money. The flour was at Tulloch's mill, Knight's Ferry. No transfer was made to me at Tulloch's mill. The wheat and flour belonged to Hale, and when I got it from Tulloch I receipted for it in my own name. I am positive I signed my own name."

At this point six receipts to Tulloch, of different dates, signed " G. W. Hale, per I. N. Miller," were produced, and the witness and plaintiff's counsel admitted that they were the receipts given by Miller for the goods in question. As to the sale and delivery by Miller to Knapp, Miller testified: " I hauled a load to Mr. Knapp's at his [Knapp's] request, and delivered it on my account to him; delivered the items set out in that account. [Plaintiff's exhibit C.] Some of this wheat and these other goods were left with Mr. Preston in his warehouse at Jamestown. They were afterwards delivered to Mr. Knapp upon my account, before he died. They are my goods at the present time. Hale and I were not interested in the goods. I did not tell Mr. Knapp that they

were delivered on Mr. Hale's account. . . . . Have received in all eighty-five dollars, and no more, on account of the claim, from Knapp and his clerks, at different times, after the delivery of the goods, and before the assignment to Preston. . . . . I can't tell when I got the first amount of money from Mr. Knapp. I kept it in my head what I drew. Had not been in the habit of drawing money from him. I had my money deposited with him. Never drew against the money. Got the first of this eighty-five dollars after delivery of most of the stuff. Have no memory of the money I received. Eighty-five dollars is the whole amount; seventy-five dollars of that from Mr. Knapp, ten dollars of that from W. H. Knapp. Think the largest amount at any one time was forty dollars; that was in the store at Columbia."
W. H. Knapp, called by plaintiff, testified that he was the son of Sewell Knapp; that he was keeping his father's books during the time the goods were delivered; that plaintiff's exhibit A — viz., "3,625 wheat, 1,573 lbs.: flour, March 24, '86. S. Knapp, T." — was in his handwriting; that the books contained an account of the goods in question, at the prices charged for them by plaintiff, but that they were credited to the account of Hale; that he did not remember paying anything to Miller on that account; that he had paid Miller different amounts on his own account; that the book containing Miller's account was not present, but was in Columbia; that he never knew that Miller had any interest in the goods, and credited them to Hale by his father's direction; that some of the goods were hauled from Jamestown by teams from Columbia. E. W. Murphy, a witness for plaintiff, testified that he had been driving and clerking for Knapp for the last eight years, and as the agent of Knapp, he received from Miller that part of the goods in question described in plaintiff's exhibit B, as follows: "Columbia, April 7, 1886. Rec'd of I. Miller 395 lbs. bran; 13 bbls. flour. S. Knapp, E. M." That he under-

stood from Knapp that the goods were to go to the credit of Hale, and so entered them on Knapp's books at the time. At Miller's request, he had given exhibit B as a memorandum of the amount of bran and flour delivered. Neither Hale nor plaintiff was called as a witness by either party. On the part of the defendants D. W. Tulloch testified that he delivered the goods from his mill to Miller, as the teamster and agent of Hale, and took receipts from him as such; that all the goods were not delivered to Miller, but that a teamster from Jamestown received a part of them.

Considering all the circumstances, I think the evidence on the part of the plaintiff was insufficient to prove his case, even *prima facie.* It depends entirely upon the testimony of Miller, which, taken as a whole, seems to be both inconsistent and unreliable. That he "became the owner" of the goods is his legal conclusion from the facts that Hale authorized him to sell the property and apply the proceeds of the sale to the payment of Hale's indebtedness to him, amounting to $111. The goods had not been actually nor constructively delivered to him before the time he says he became the owner of them, nor at any time before they were delivered to Knapp. The quantity of none of the different kinds of goods of which he says he became the owner—wheat, flour, bran, and middlings — had been ascertained or designated by weight, measure, or otherwise, nor separated from the whole quantity which Hale had stored at Tulloch's mill; and it seems incredible that it was ever the intention of the parties that Miller should take and become the owner of all Hale's wheat, flour, etc., stored at Tulloch's mill, of the market value of $578.81, "in part payment" or in full payment of Hale's debt of only $111. Miller's legal conclusion that he became the owner of the goods while they were stored at Tulloch's mill is only at par with his assertion that he was still the owner of them at the time of the trial. The reliability of Miller's testimony as to

facts is tested, somewhat to its disadvantage, by the proof that he was, at least, mistaken in positively testifying that he receipted for the goods to Tulloch in his own name. Taken all together, I think the evidence on this branch of the case substantially tends to prove only that Hale authorized Miller, as Hale's agent, to sell and collect the pay for so much of the goods as might be necessary to pay the debt of $111, and to apply the proceeds to the payment of that debt. As to the alleged sale of the goods by Miller to Knapp, it is to be observed in the first place that Miller, except as agent for Hale, could pass to Knapp no better title to the goods than he had; and in the second place, if he had no title, and passed none from himself to Knapp, there could have been no implied promise of Knapp to pay him the value of the goods. An implied promise, if any, must have been to pay the owner of the goods delivered, and not to pay the owner's servant or agent who delivered them.

It follows that the plaintiff must recover, if at all, upon a valid, express promise of Knapp to pay him for the goods. Is the evidence sufficient to prove such a promise? It should be borne in mind that to Knapp, and all others who knew Miller's relation to Hale to be that of Hale's servant, as teamster, the acts of Miller in hauling and delivering goods were ostensibly and presumptively the acts of Hale, in the absence of notice to the contrary. Now, the only evidence claimed to have any tendency to prove that Knapp had any notice that Miller owned or claimed the goods, or that he was selling or delivering them on his own account, or that Knapp promised to pay Miller, is the loose, indefinite testimony of Miller. He first testifies that when Hale asked him if he would sell that wheat, and take his pay out of it,— "I said I would, and Knapp bought it, and said he would settle with me." Further on he says: "I hauled a load to Mr. Knapp's at his [Knapp's] request, and delivered it on my account to him; delivered the items set out in

that account," — exhibit C. Yet that account states that a considerable portion of the "items set out" in it were delivered by Preston; and the witness proceeds to say: "Some of this wheat and these other goods were left with Mr. Preston in his warehouse at Jamestown. They were afterwards delivered to Mr. Knapp upon my account." All this testimony of Miller seems to be intentionally evasive of the questions in dispute. He does not say that Knapp was informed, or had any kind of notice, that the goods belonged to him, nor that they were delivered on his account. Nor does he say that Knapp "bought" the goods from him, or promised to pay him, but only that "Knapp bought it, and said he would settle with me." From whom did Knapp buy it, and what or on whose account did he say he would settle? It is possible, however, that Miller intended to be understood, and even supposed he had said, that he informed Knapp that the goods belonged to himself, and not to his master or principal, and that he sold and delivered them on his own account; and also, that Knapp promised to pay him. But under the circumstances of this case, his testimony is too indefinite and uncertain to prove an express promise of Knapp to pay him for the goods. Considering the weakness and uncertainty of Miller's testimony, the failure to corroborate and strengthen it by the testimony of Hale and the plaintiff casts an additional shade of suspicion upon it, as Hale must have known all about the transaction between himself and Miller, and the plaintiff could have explained the conditions and circumstances under which he delivered a portion of the goods to Knapp. No reason or excuse for not having called them as witnesses appears. The alleged payment of eighty-five dollars by Knapp to Miller is accounted for otherwise than as having been a payment on account of the goods. It is admitted that Miller had a running account and money on deposit with Knapp at the times he drew this money; and W. H. Knapp testified that the money was

charged to Miller's account, as he understood it should be when Miller drew the money. I think the judgment and order should be reversed, and a new trial granted.

GIBSON, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed and a new trial granted.

PATERSON, J., dissented.