[Civ. No. 67.   Fifth Dist.   Jan. 25, 1962.]

CREDIT BUREAUS OF MERCED COUNTY, INC., Plaintiff and Respondent, v. OTIS D. FULLER, Defendant and Appellant.

L. Diel and Robert S. Sturges for Defendant and Appellant.

Samuel K. Brantley for Plaintiff and Respondent.

CONLEY, P. J.—Otis D. Fuller appeals from a judgment in favor of the plaintiff Credit Bureaus of Merced County, Inc., a corporation, and against him personally and Fuller & McCulley, the alleged partnership, on four assigned claims, as follows:

| | |
|---|---|
| Pacific Gas and Electric Company | $    9.07 |
| Aaron L. Kelley | 37.90 |
| Concrete Supply Company | 197.89 |
| Baleme Construction Company | 425.00 |

The judgment carried interest on the above amounts and costs of suit.

The services and materials were furnished by the assignors in connection with the construction of an $18,000 dwelling house in the City of Merced; the application for the building permit was made in the name of Fuller & McCulley by one Earl Dillard. Each of the assignors gave credit based on the representation that the partnership was constructing the residence.

The defense urged by the appellant is that while there was originally a partnership between him and Mr. McCulley, it was dissolved prior to the time when the bills were incurred and that, therefore, he had no liability for them.

Essentially, the question to be determined by this court is whether the trial court had substantial evidence to support its findings. If there was such evidence, it is elementary that we cannot indulge in any speculation as to which witnesses should have been believed or as to the relative weight of the conflicting evidence, including inferences and presumptions.

The original existence of the partnership, Fuller & McCulley, was unquestionably proven. Mr. Fuller himself testified that such a partnership did in fact exist prior to the 31st day of May, 1955, and that it carried on a contracting business with headquarters in Fresno. Inasmuch as there is a presumption that a partnership once proved to exist continues in being unless and until the contrary is shown (*Asamen* v. *Thompson*, 55 Cal.App.2d 661 [131 P.2d 841]; 40 Am.Jur., Partnership, § 240, p. 296, § 258, pp. 307-309), it follows logically that the burden of proof of dissolution of the partnership fell squarely upon Mr. Fuller's shoulders. (*Torvend* v. *Patterson*, 136 Cal.App. 120, 125 [28 P.2d 413]; *Carvalho* v. *McCoy*, 128 Cal.App.2d 702 [276 P.2d 21]; *Vogler* v. *Ingrao*, 123 Cal.App.2d 341, 344 [266 P.2d 826].)

The so-called contract of dissolution was introduced in evidence as well as a certificate of dissolution. The agreement of dissolution of copartnership, dated the 14th day of February, 1955, is a somewhat unusual document in that some of its provisions would lead to the conclusion that it is rather a declaration of intention to effect a future dissolution under certain terms and conditions than an actual dissolution contemporaneous with its execution. While it states that the copartnership shall be dissolved and terminated as of the date of the agreement, it provides further that the parties shall ". . . undertake the winding up of the affairs of said business and complete all jobs now in progress, and further from the proceeds and assets of said co-partnership shall pay and discharge all of the obligations of said business." It continues by stating that when the partnership has been wound up any net assets remaining after payment of obligations shall be divided equally between the partners and that the personal property shall be divided "as mutually agreed upon." The agreement further provides that said parties shall render an accounting each to the other and ". . . upon the completion of winding up of said co-partnership, a notice of the dissolution of said co-partnership shall be given by publication in a newspaper of general circulation in the County of Fresno, State of California, and a copy of said notice of dissolution shall be filed with the County Clerk of Fresno County."

The certificate of dissolution is dated May 27, 1955. It is signed and acknowledged by each of the partners and recites that the partnership has been dissolved by mutual consent. This certificate was filed in the County Recorder's Office of Fresno County on May 31, 1955.

However, the parties never published in a newspaper of general circulation any notice of the dissolution of the copartnership, and they never filed a copy of any document relating to a dissolution in the office of the County Clerk of Fresno County. There was thus a failure on the part of the partners to comply with the requirements of section 15035.5 of the Corporations Code, which provides as follows:

"Whenever a partnership is dissolved, a notice of the dissolution shall be published at least once in a newspaper of general circulation in the place, or in each place if more than one, at which the partnership business was regularly carried on, and an affidavit showing the publication of such notice

shall be filed with the county clerk within thirty days after such publication.''

The trial court found that none of the assignors of the plaintiff had any notice or knowledge of the alleged dissolution of the copartnership until after they had furnished the services and materials which were the basis of the judgment in their favor.

In 40 American Jurisprudence, Partnership, section 258, pages 307 to 308, it is said:

''It does not necessarily follow from the fact that since between the partners the partnership is dissolved by their mutual consent or by the act of one of the partners, and thereby the power of one partner to act for and bind the others is effectively terminated inter se, that the liability of the partners is terminated as to third persons who subsequently extend credit on the assumption that the firm is still existing. Since a partnership once established is, in the absence of anything to indicate its termination, presumed to continue to exist, the law for the protection of innocent third persons imposes upon partners, when they dissolve the partnership relation or when dissolution is effected by the retirement or withdrawal of one of the partners, the duty of giving notice of the dissolution of the partnership; otherwise, they run the risk of being bound to third persons by the subsequent exercise of the authority which they have given to each other as partners. Under this rule, the members of a partnership after dissolution continue liable to those with whom they have previously dealt as partners who have no notice or knowledge of the dissolution of the firm, and who in good faith continue to act in the belief that the firm is still in existence. Secret articles of dissolution of partnership of which no notice is given will not terminate the liability of each for the acts of the other partners. As has been pointed out, since the agency of partners to act for the firm in partnership transactions may be revoked by the act of a copartner in withdrawing and giving due notice that he will no longer be bound by their acts, he who permits himself to be held out as a partner should bear the penalty for failing to give the required notice rather than an innocent person who would otherwise suffer.''

The trial court had before it the following facts upon which to base its findings and judgment: The building permit was applied for in the name of the partnership which had

theretofore done business, although not its principal business, in the County of Merced. Two of the creditors who assigned their claims to plaintiff testified that they had had business dealings previously with the copartnership. The application to each of the creditors was in the name of the partnership. It must be assumed that the persons applying for the permit to build and asking for credit with the various assignors of the plaintiff were acting in good faith. Fraud is never presumed (23 Cal.Jur.2d, Fraud and Deceit, § 73, pp. 182-184), and there are presumptions that the laws were obeyed, that the transactions were fair and regular, and that the ordinary course of business was followed. (Code Civ. Proc., § 1963, subds. 19, 20 and 33.) Of course, a fraudulent ex-partner might use the partnership name without authorization. But a contrary inference may well be drawn by the finder of fact.

There is another major factor that the court could take into consideration in making a finding as to the existence of the partnership, namely, the testimony of Mr. Baleme, one of the assignors, that he had actually seen Mr. Fuller on the job on one occasion in Merced while he himself was inspecting the subcontract work which had been done by his employees; that he told Mr. Fuller that certain fill-ins should be made in order to put the installed property in good position and condition, and that Mr. Fuller agreed to see that the corrective measures were taken. We have in mind the fact that Mr. Fuller testified that at that time he was in San Jose and was never present at the site of the job, but the trier of fact had the right to resolve any conflicts in the evidence; it was for the trial judge to determine which of the two persons was telling the truth.

Everything in the record being carefully weighed, we reach the conclusion that the trial court was within proper discretionary limits in granting judgment to the plaintiff.

The judgment is affirmed.

Brown, J., and Stone, J., concurred.