[Civ. No. 25712.   Second Dist., Div. Four.   May 7, 1962.]

JACK DOYLE ROGERS, Plaintiff and Respondent, v.
BILL AND VINCE'S, INC., Defendant and Appellant.

Milton A. Krug and Henry W. Low for Defendant and Appellant.

Paul K. Duffy for Plaintiff and Respondent.

BALTHIS, J.—This is an appeal from a judgment of the trial court holding the defendant Bill & Vince's, Inc., in breach of contract for the purchase of a liquor license and for nonpayment of rent in connection with a lease of a restaurant. In its answer defendant pleaded that the entire transaction between the parties had been induced by the fraudulent representations of plaintiff, and set up affirmative defenses and causes of counterclaim based on its attempted rescission of the transaction. Although the trial court found that plaintiff had made fraudulent representations in connection with the sale of the restaurant and liquor license, it also found that defendant was put on inquiry as to the truth of the representations and therefore was not entitled to rely upon such representations. The court then gave plaintiff judgment for $7,960, being $6,000 for breach of the contract to purchase the liquor license and $1,960 for rent payments due under the lease; defendant was denied any relief on its counterclaims. Defendant appeals from the judgment.

The facts of the controversy are as follows: Plaintiff Jack D. Rogers in February 1958 commenced negotiations with Vincent Hoefling and William H. Morris for the sale of certain

personal property and the good will of a restaurant business known as "The Wheel"; for the making of a lease of the premises on which said business was located and for the sale of the on-sale liquor license issued for said restaurant.

Morris and Hoefling intended to incorporate and subsequently did incorporate defendant corporation as Bill & Vince's, Inc.

An escrow opened on June 2, 1958, and instructions were signed and delivered to the escrow holder on June 30, 1958. The sum of $6,000 was deposited by the buyer which was the agreed selling price of the liquor license alone; the total purchase price for the restaurant; the assets mentioned and the liquor license, was approximately $17,500.

Application was made to the Department of Alcoholic Beverage Control for the transfer of the license and a license was issued in the name of Bill & Vince's, Inc., on August 11, 1958. About August 21 plaintiff informed defendant's attorney that a restaurant had to be operated by the record owner of the liquor license and he requested that defendant operate the business in order to comply with the law and avoid jeopardizing the license. The attorney did not object but pointed out that the escrow had not closed because various documents and arrangements had not yet been agreed upon. Bill & Vince's, Inc., commenced operating the restaurant on August 26, 1958, at which time the lease went into effect.

On September 3, 1958, defendant caused a notice of rescission and offer of restoration to be served on plaintiff based on a number of misrepresentations made to defendant concerning the daily volume or receipts of the restaurant and on other grounds. On September 4, 1958, plaintiff served a three-day notice "to pay rent or quit." On September 5 defendant tendered back possession of the premises and the key thereto; and also on September 5 plaintiff filed the instant suit for breach of contract. The restaurant was vacant and inoperative until March 1959 when plaintiff leased the property to another party.

The trial court found "That the plaintiff represented to William Morris and Vincent A. Hoefling, who later caused the defendant corporation to be formed for the purpose of purchasing said restaurant, that the gross volume of business of the said restaurant was $300.00 per business day, which said statement was false, and known by him to be false and untrue." This finding is amply supported by the evidence. The discrepancy between the $300 per day figure and the

actual daily gross which was substantially less was arrived at by a duplication of figures. Liquor which was sold in the restaurant was reflected in both the restaurant sales figures and the bar sales figures.

After finding such representations as to the volume of business made by the plaintiff to be false and untrue, the trial court made the additional finding as follows: "That the statement of plaintiff [to] William Morse and Vincent A. Hoefling regarding the volume of business of the restaurant was made under circumstances that would have put a reasonable man on inquiry, and that if a full inquiry had been made by them it would have disclosed the fact that plaintiff was operating and had been operating the said business under a considerable loss in the year 1957 and in the months of 1958 prior to the sale of the said business by plaintiff to defendant. That said Morris and Hoefling were experienced in restaurant sales, and that for a substantial period of time after the misrepresentation of volume of business by plaintiff, the said officer and employee visited the said restaurant on many occasions and checked on the volume of business that was actually being done by the said restaurant. That a proper inquiry would have disclosed that there were duplication[s] of figures which reduced the true volume of business and would have shown the real and actual volume of business being done by the said restaurant, and that it was operated at a loss. That said Morris and Hoefling did not rely and were not entitled to rely on the said representation that said restaurant was doing a $300.00 a day gross business."

Defendant contends the conclusion reached by the trial court in its finding that defendant was not entitled to rely on the representations made by plaintiff is an error of law.

That part of the finding that defendant "did not rely" must be construed in connection with and as part of the entire finding; this compels the conclusion that the trial court believed defendant "did not rely" upon the representations as a matter of law because it was not entitled to rely upon them. There was no evidence before the court that defendant did not in fact rely upon the representations.

The first question presented is whether the representation made by plaintiff that the daily receipts of the restaurant were $300 per business day is a *material* representation. A false representation as to income or profits from a property or business is a material misrepresentation and a basis for

rescission (*Nisson* v. *Hood,* 140 Cal. 224 [73 P. 981]; *Wilson* v. *Shultz,* 102 Cal.App.2d 345, 351 [227 P.2d 524]).

█ In the sale of a business such as an existing restaurant, sale negotiations frequently will turn on the volume of business (or daily receipts) handled. Any statement or representation by the seller as to "daily receipts" becomes a very material representation.

In *Bologa* v. *Pitsillos* (1944) 308 Mich. 182 [13 N.W.2d 253], defendant advertised that a restaurant was doing a business of $50 a day and he repeated the misrepresentation to plaintiff, who bought the business. The restaurant had probably grossed less than $25 a day. The case was tried before a judge without a jury, and the judge held that the rule of caveat emptor applied and that there was no proof of a fraudulent representation; this was reversed by the appellate court which ordered judgment for the plaintiff buyer. The court said (13 N.W.2d 253, 254): "We have frequently held that misrepresentation of income of a business is a material one and constitutes grounds for rescission."

We hold that in connection with the sale of a business such as a restaurant a misrepresentation as to the gross volume of business handled is a material one.

█ The next question is whether defendant (the buyer in the instant case) was entitled to rely upon plaintiff's representations as to daily receipts. The trial court found that the representation made by plaintiff seller "was false, and known by him to be false and untrue." In such a situation where the seller knowingly and intentionally makes a false representation he cannot contend that the buyer was negligent and therefore not in a position to rely upon such representations.

In *Hefferan* v. *Freebairn,* 34 Cal.2d 715 [214 P.2d 386], the plaintiff buyer agreed to purchase the "Gilray Coffee Shop" from defendant (seller) and brought an action for rescission upon discovering that defendant's representations as to the profits from the restaurant were false. The court declared (p. 719): "Defendant contends that plaintiff is precluded from rescinding the contract by virtue of the knowledge that he acquired or should have acquired in the course of the negotiations with defendant. The standards by which the buyer's acts must be judged were set forth by this court in *Seeger* v. *Odell,* 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291], 'Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation

was intentional rather than negligent. . . . Nor is a plaintiff [buyer] held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man.' ''

In *Salvati* v. *Cusolito*, 98 Cal.App.2d 582, 584 [220 P.2d 800], the rule is stated as follows: ''When a misrepresentation is intentional rather than negligent a plaintiff's [buyer's] failure to discover the falsity of the statement is no defense and the fact that an investigation would have revealed the falsity will not always bar a recovery.''

We now turn to the question as to whether the defendant buyer in the instant case was put on inquiry and was bound to make an independent investigation as to the gross volume of business being done at the restaurant.

There was conflicting testimony as to whether the books of ''The Wheel'' café were ever made available to Mr. Morris and Mr. Hoefling, acting for defendant. However, plaintiff did admit that he ''could have told'' Messrs. Morris and Hoefling that there was no purpose in looking at the books because he was charging his losses from his other operations to ''The Wheel'' café. The trial court made no express finding with reference to the books but simply found as above stated ''that if a full inquiry had been made by them [Morris and Hoefling] it would have disclosed the fact that plaintiff was operating and had been operating the said business under a considerable loss.''

Plaintiff as seller had superior knowledge as to the exact daily receipts of the restaurant being sold; there were numerous meetings between plaintiff and Messrs. Morris and Hoefling and instead of giving these men the true figures plaintiff gave them false figures on a material matter, knowing them to be false. Morris and Hoefling, representing the corporate defendant, had a right to rely upon these representations of plaintiff and they were not put upon inquiry to make an independent investigation.

In *Miller* v. *Eisenberg*, 90 Cal.App.2d 479 [203 P.2d 11], plaintiff purchased ''Joe's Coffee Bar'' from defendant. During the negotiations defendant falsely represented that he was grossing between $50 and $75 per day. In an action for rescission, judgment for the plaintiff buyer was affirmed. On the point as to whether defendant was obligated to make an investigation, the court stated (p. 481): ''From our examination of the record, we conclude that the question of whether plaintiffs made or should have made an independent investigation is not involved herein. There is substantial testimony

that the plaintiffs entered into the sale in reliance upon defendant's representations. They were entitled to so rely and were not obliged to make an independent investigation.''

In *Eck* v. *McMichael*, 176 Cal.App.2d 368 [1 Cal.Rptr. 369], plaintiff brought an action to rescind a contract for the purchase of a business from defendant on the ground that defendant falsely represented the net profit he made in the operation of the business. The trial court found to the effect that defendant did not intend to defraud plaintiff by making such statements about the net profits from the business; the trial court further found that plaintiff did not rely upon the representation. In reversing the judgment the appellate court said, at page 371: ''The finding of the trial court to the effect that the defendant did not intend to defraud the plaintiff by making such statements furnishes no support for the judgment. A representation as to the net profits actually being made is one of fact and a positive misstatement of fact by one in a position to know the truth is in the eyes of the law a fraudulent misrepresentation. . . . Respondent is unable to point to any substantial evidence to support the finding that the plaintiff did not rely upon this representation.''

Where the representation has to do with the volume of business, income or profits and the facts are peculiarly within the knowledge of the seller, the buyer is entitled to rely upon such statements and is not bound to make an independent investigation. (*Sullivan* v. *Helbing*, 66 Cal.App. 478, 483-484 [226 P. 803]; *Ketelhut* v. *Gunther*, 100 Cal.App. 409, 412 [279 P. 1083], and see *Jenness* v. *Moses Lake Development Co.* (1951) 39 Wn.2d 151 [234 P.2d 865, 870]; see also Note, 27 A.L.R.2d 14, 33, 41.)

The making of an independent investigation or the examination of the property does not preclude reliance on the representations where the person making the statements has a superior knowledge or the falsity would not be apparent from an inspection (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 748 [192 P.2d 935]).

Undoubtedly there are cases where the buyer has no right to rely upon the seller's representations. For example, where the statements are in the form of an opinion or estimate as to income or profits, reliance would not be justified (*Carlson* v. *Brickman*, 110 Cal.App.2d 237, 245 [242 P.2d 94]). And if an experienced buyer makes his own investigation and relies thereon, he cannot thereafter claim he relied upon the misrepresentations made by the seller in an advertisement (*King*

v. *Miller*, 97 Cal.App.2d 702, 703 [218 P.2d 554]). Our examination of the record in the instant case indicates that the above cases are not in point or controlling here in that the statements of the plaintiff were direct representations as to material facts and the buyer did not make an independent investigation upon which it relied.

In summary we conclude: (1) The representation by plaintiff as to the gross daily volume of business of the restaurant was a material one; (2) in view of the fact that plaintiff made the representation knowing that it was false and untrue, plaintiff cannot avoid rescission on the ground of negligence on the part of defendant in failing to make inquiry; and (3) defendant was entitled to rely upon such representation made by plaintiff as to the daily receipts from the restaurant business and was not under an obligation to make an independent investigation.

Defendant gave notice of rescission promptly upon discovery and was entitled to rescind the contract and the lease. The judgment for the plaintiff here, being based upon the validity of the contract and lease, cannot be permitted to stand.

On the counterclaim filed by defendant, the court found that defendant suffered no damage and therefore judgment was rendered for plaintiff on such counterclaim. Defendant's defense to plaintiff's action was an effective rescission. In view of our holding that the rescission was effective, defendant is not in a position to claim such damages as would be based upon an affirmance of the contract, that is, the difference between the value of the business if the fraudulent representations made by the plaintiff had been true, and the actual value of the business. As to the other special damages claimed, the trial court found against defendant.

Comments have been made in the briefs as to matters occurring after the action was filed and not covered by the pleadings or pretrial order. This concerns principally the sale of the license (because of possible cancellation) by defendant after it gave notice of rescission and offered to restore it to plaintiff. Plaintiff may have a cause of action for anything received by defendant from the sale of such license and defendant in its brief has stipulated "that if the judgment in this case be reversed and the case remanded, appellee [plaintiff] may amend his pleadings so as to assert such a cause of action and appellant [defendant] hereby waives the right to set up the statute of limitations as a defense thereto." The

trial court may proceed to act upon an application by plaintiff to amend his complaint pursuant to the stipulation, providing such application be made with reasonable promptness.

The judgment that plaintiff recover from defendant $7,960, together with costs, is reversed; the portion of the judgment that defendant is denied any recovery on its counterclaim is affirmed. The trial court is otherwise directed to proceed in accordance with the above opinion. Defendant to recover its costs on appeal.

Burke, P. J., and Jefferson, J., concurred.