40 Cal.Rptr. 634]

[Civ. No. 7193. Fourth Dist. Sept. 24, 1964.]

MARJORY M. PEARSON, Individually and as Executrix, etc., Plaintiffs and Appellants, v. LALITA NORTON, Individually and as Executrix, etc., Defendants and Respondents.

Dillavou & Cox and C. C. Dillavou for Plaintiffs and Appellants.

Robert E. Sease for Defendants and Respondents.

BROWN (R. M.), J.*—This appeal originated in a transaction for the sale, purchase and exchange of real and personal property giving rise to the complaint for damages based on fraud and deceit, on the one hand, and the cross-complaint for damages based on fraud and deceit, on the other hand. At the outset of trial the complaint was dismissed. The issues in the case are those raised by the cross-complaint, as amended, and the answers thereto.

Cross-complainants and respondents, Philip Norton and Lalita Norton, owned certain realty improved with duplex bungalows situated in Seal Beach. Dr. Robert G. Pearson and Marjory M. Pearson owned realty improved with a fully furnished and equipped hotel, known as the Casa Blanca, situated in Palm Springs.

Through Mildred Jackson, a real estate agent who represented both the Nortons and the Pearsons, a sale-exchange of the two properties was consummated. The Pearsons transferred the hotel realty and personalty, valued at $335,000, to the Nortons. The Nortons transferred to the Pearsons 10 of the duplex bungalows valued at $235,000, and paid the remainder in cash and by the assumption of the obligations of two trust deeds. The escrow closed and the Nortons took possession of the hotel on January 11, 1957.

Prior to the commencement of this action, Dr. Pearson died. On September 16, 1957, Marjory M. Pearson, individually and in her capacity as executrix of Dr. Pearson's estate, commenced this action by filing a complaint against the Nortons based on a theory of fraud and deceit. Divers pleadings were filed and motions made, culminating in an amended cross-complaint filed by Philip Norton and Lalita Norton contain-

*Assigned by Chairman of Judicial Council.

ing three causes of action, all founded on the theory of fraud and deceit. Only the second cause of action is relevant here. The second cause of action is against Marjory M. Pearson, individually and as executrix of the estate of Robert G. Pearson and Doe Company. It is alleged that a partnership relation existed between the Pearsons and that the partnership transacted business as Doe Company. By the prayer, cross-complainants sought a money judgment; that it be declared by the court that Marjory M. Pearson, individually and as executrix, holds the duplex bungalows in Seal Beach for the benefit of the partnership composed of the Pearsons and as trustee for the creditors thereof, and that the court decree that such property be sold and the proceeds of such sale be first applied to payment of the claim founding the cross-complaint.

At the commencement of trial and upon motion made by the cross-complainants, the cross-complaint was by order amended by substitution of the name ''Casa Blanca'' for the name ''Doe Company.''

Upon a nonjury trial judgment was rendered in favor of the cross-complainants and against the cross-defendants, pursuant to the second cause of action based on theories of fraud and partnership, in the sum of $53,800. It was decreed that the realty in Seal Beach was and is an asset of Casa Blanca, a partnership; that the estate of Robert G. Pearson owns no interest in such property; that such estate owns only an interest in the partnership; and that Marjory M. Pearson, individually, as executrix, and as surviving partner, holds such property as trustee for the benefit of the creditors of the partnership. It was further decreed that the cross-complainants are creditors of the partnership to the extent of the money judgment; the duplex property was ordered to be sold and the proceeds first applied in satisfaction of the judgment, with interest and costs; and any surplus to be delivered to the cross-defendants. It was further ordered that such order of sale shall not preclude the cross-complainants from satisfying the judgment through any other available legal process, nor limit their recovery to the Seal Beach property or the proceeds of a sale thereof.

Intermediate submission of the cause at the close of trial and the subsequent entry of judgment, Philip Norton died and Lalita Norton, as executrix, was substituted in his place.

The cross-defendants' motion for a new trial was denied

and this appeal followed. Appellants are here represented by counsel other than their trial counsel.

Appellants first contend that the evidence is insufficient to support a finding that they defrauded the respondents and a finding that Dr. Robert G. Pearson and Marjory M. Pearson were partners at the time of the real estate transaction.

The trial judge saw and heard the witnesses. ■ Where disputed questions of fact are presented to the fact-finding entity and are passed upon, unless clearly erroneous, the findings of fact will not be disturbed by the reviewing court. ■ It is not the province of an appellate court to substitute its judgment for that of the trial judge where there is a conflict in the evidence. It is his province alone to determine the weight of the evidence, the credibility of the witnesses and to resolve all conflicts and contradictions. ■ On an appeal from a judgment, the evidence must be viewed in its aspects most favorable to the respondents, and all legal inferences must be drawn therefrom most strongly in respondents' favor; all contrary and contradictory evidence must be rejected and the findings of the trial court must be upheld if sustained by any substantial evidence. Nor will a judgment be reversed because the trier of facts could have drawn different inferences from the evidence or because the reviewing court might have drawn conclusions other than those drawn if it passed upon the evidence as upon original presentation. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]; *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Vogelsang* v. *Wolpert*, 227 Cal.App.2d 102 [38 Cal.Rptr. 440].)

■ In its broad, general sense the concept of fraud embraces anything which is intended to deceive, including all statements, acts, concealments and omissions involving a breach of legal or equitable duty, trust or confidence which results in injury to one who justifiably relies thereon. ■ The elements of actionable fraud are set out in *Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 68 [306 P.2d 1017]. Without quoting exactly, they are: (1) a false representation, actual or implied, or the concealment of a matter of fact, material to the transaction, made falsely; (2) knowledge of the falsity, or statements made with such disregard and recklessness that knowledge is inferred; (3) intent to induce another into relying on the representation; (4) reliance by one who has a right to rely; and (5) resulting damage. All of these elements must be present if actionable fraud is found; one element absent is

fatal to recovery. There is no absolute or fixed rule for determining what facts will constitute fraud; whether or not it is found depends upon the particular facts of the case under inquiry. ▮ Fraud may be proved by direct evidence or it may be inferred from all of the circumstances in the case. (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18, 21 [193 P.2d 728].) "Actual fraud is always a question of fact." (Civ. Code, § 1574.)

▮ The trial judge found, by adoption of allegations set forth in the cross-complaint, that there were six separate instances of fraud. Briefly restated, it was found that the Pearsons represented that the Casa Blanca Hotel, and particularly the bathrooms therein, were of the finest construction when in fact it was of cheap construction and many bathrooms contained metal tile rather than ceramic tile; that it was represented the gross annual income, based on the Pearsons' own operational experience, was between $80,000 and $85,000 when in fact the gross income for 1956, the one year of operation of the completed hotel, did not exceed $25,000 and the operation was not profitable; that it was represented that all furniture, equipment and effects in the hotel, save personal furniture in the Pearsons' apartment, were included in the sale when in fact the Pearsons never intended to transfer all of the furnishings and effects but intended to, and did, remove large quantities thereof during the pendency of the escrow. The remaining findings to which objection is made will be adverted to hereinafter.

All of the misrepresentations found to have been made were made by Dr. Pearson on December 20, 1956, when the Nortons inspected the hotel properties. On that occasion there were present Dr. Pearson, Mr. and Mrs. Norton, and the realtor, Mildred Jackson. There was testimony that both Dr. Pearson and Mrs. Pearson told the Nortons they had built the major portion of the hotel premises and that the hotel was "well-built." Respondents produced Herbert H. Foster, a licensed general contractor and qualified appraiser, who testified that he had inspected the newly constructed buildings; that the bathrooms therein were of cheap construction; that plywood, instead of plaster, was used behind the tile; that the adhesive material which had been used was too thin to hold the tile in place and individual tiles had loosened and fallen; that the water pans under the showers were inadequate; that water seeped behind the tile into the walls and flooring and ran into the apartments below. Mrs. Norton testified that, when water

was flowing in some of the showers in the second story apartments, a stream of water about the size of a cigarette came from the ceiling fixtures in the bathrooms located on the first floor. There was other testimony, which it is unnecessary to summarize here, tending to establish structural defects in the hotel buildings. There was thus evidence to support the finding.

Both Mr. and Mrs. Norton testified that, in answer to a direct question asked by Mr. Norton, Dr. Pearson stated that the past annual gross income of the hotel was between $80,000 and $85,000. Mildred Jackson, the realtor, testified that she did not hear the entire conversation, but she did hear Dr. Pearson use the figures $80,000 and $85,000 in speaking to Mr. Norton. Both Mr. and Mrs. Norton further testified that Dr. Pearson also showed them a room charge sheet setting forth rentals of $25 per day for the apartments and $15 per day for the rooms. Although there is no evidence that he stated these rentals were received from guests in all instances, the Nortons, relying on the room charge sheet which they had been shown, believed this to be true. From testimonial evidence adduced at the trial and from the bookkeeping records introduced as exhibits, it was established that lower rates had been charged at times by the Pearsons and Mr. Norton testified that, in the subsequent operation of the hotel, the Nortons were unable to maintain those rates. The statement made by Dr. Pearson as to the annual gross income of the hotel qualifies as both fraud and deceit within the purview of Civil Code sections 1572, subdivision 1, and 1710, subdivision 1, i.e., ''The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.'' As was said in *Eck* v. *McMichael*, 176 Cal.App.2d 368, 370 [1 Cal.Rptr. 369] : ''Obviously, to the prospective purchaser of a business, a representation as to the profit it has been making is of the utmost materiality and is, in many instances, the one substantial inducement to entering into the contract.''

In the case of *Rogers* v. *Bill & Vince's, Inc.*, 203 Cal.App.2d 292, at page 296 [21 Cal.Rptr. 269], it was held that ''in connection with the sale of a business such as a restaurant a misrepresentation as to the gross volume of business handled is a material one.'' (See also *Siebold* v. *Berdine*, 61 Cal.App. 158, 160 [214 P. 655].)

Certainly a statement by the seller, who has superior knowledge, of the annual gross income of a business does influence the sale, if only to quiet the mind of the purchaser

and lull him into not pursuing an independent examination of the books and profit and loss statement.

Apparently for the purpose of attempting to demonstrate that any reliance placed by the Nortons upon the statements of Dr. Pearson was unjustified, appellants point to the fact that Mr. Norton has been licensed by the State of California as a real estate broker since 1911; that he was, at the time of the transaction, looking at acreage in and near Palm Springs with a view to subdividing the same; that he made no independent investigation of the cost of the Casa Blanca; and that he visited the hotel only once and that visit occurred the day before the escrow opened. However, Mr. Norton testified that his experience as a real estate broker was limited to the field of subdivisions; that he was not active in the real estate business since World War II; that he was inexperienced in the hotel business; that the Nortons had recently returned from a 10-year stay in a secluded wilderness area of Wyoming; that he believed his life had been twice saved by doctors; that he believed a man of the medical profession to be a man of highest integrity; that he therefore made no investigation of the Casa Blanca either as to income or construction costs; that he relied completely upon all statements made by Dr. Pearson; and that he would not have purchased the hotel had he known the true gross income derived therefrom. The evidence briefly summarized above merely created conflicts which the trial court resolved in favor of respondents, as it had a right to do. There is substantial evidence to support a finding that the Nortons relied upon the statements of Dr. Pearson. That reliance resulted in damage is clear. As was said in *Hefferan* v. *Freebairn*, 34 Cal.2d 715, at page 721 [214 P.2d 386]: "It is obvious that receiving a business earning less than $10,000 a year constitutes a substantial injury to a buyer to whom it was represented as earning $20,000."

The gist of the next finding attacked by appellants is that Dr. Pearson promised to include in the sale-exchange all hotel furniture and effects, without any intention to keep that promise.

Fraud and deceit may consist of "A promise made without any intention of performing it." (Civ. Code, § 1572, subd. 4; § 1710, subd. 4.) When the Nortons inspected portions of the hotel property on December 20, 1956, the linen closets and rooms were fully stocked; when they took possession on January 11, 1957, the stores were greatly depleted. There was evidence that, immediately after the escrow opened, the Pear-

sons, either personally or through employees who so testified, removed large quantities of linens, blankets and other effects, as well as certain furnishings and yard furniture. Due to the short lapse of time between the making of the promise and the removal of the personal property, the court was justified in determining that, at the time the promise was made, the Pearsons had no intention of keeping it.

The remaining findings which the appellants attack as being unsupported by the evidence are of a minor nature and do not run to the essence of the contract. Respondents point to no evidence in support thereof and our own review of the testimonial record discloses none. Language borrowed from *Vogelsang* v. *Wolpert, supra,* 227 Cal.App.2d 102, 111 is pertinent: ''When a plaintiff alleges more than one instance of fraudulent conduct, he is not required to establish the character of every such representation; proof of a single material instance of fraud is sufficient to justify a judgment in favor of the defrauded person, if other necessary factors are present.''

The remaining findings in question are not necessary to support the judgment and therefore may be disregarded as surplusage. (*Feykert* v. *Hardy,* 213 Cal.App.2d 67 [28 Cal. Rptr. 510].)

We hold that all of the elements of actionable fraud are present and the evidence is sufficient to support all findings of fraud necessary to sustain the judgment.

Appellants next contend that the evidence is insufficient to support findings that Dr. and Mrs. Pearson were engaged in business as partners under the common name and style of Casa Blanca at the time of the transaction here involved. The existence or nonexistence of a partnership is primarily a question of fact for the trial court to determine from the facts as established by the evidence and the inferences to be drawn therefrom (*Spier* v. *Lang,* 4 Cal.2d 711, 716 [53 P.2d 138]) and the burden of proving dissolution is upon the party asserting it. The evidence discloses that Dr. and Mrs. Pearson and one Julius W. Levine purchased the Casa Blanca Hotel in October 1954, commenced the construction of additional units, and operated the business as a partnership. The Pearsons purchased Levine's interest in July of 1955 and continued construction work and operation of the hotel business. It is conceded that no notice of dissolution of the Pearson-Pearson-Levine partnership was advertised. There is no evidence that any proceedings were

taken to dissolve or wind up the affairs of that partnership. It is therefore presumed that the partnership continued. (*Credit Bureaus of Merced County* v. *Fuller,* 199 Cal.App.2d 495, 496 [18 Cal.Rptr. 668] ; *En Taik Ha* v. *Kang,* 187 Cal. App.2d 84, 89 [9 Cal.Rptr. 425] ; *Asamen* v. *Thompson,* 55 Cal.App.2d 661, 668-669 [131 P.2d 841].) Further, respondents introduced in evidence as an exhibit a copy of an "Application for Seller's Permit and Registration as a Retailer and Department of Employment Registration as an Employer" dated August 8, 1956, bearing number 311505, made in behalf of Dr. Robert G. Pearson and Mrs. Marjory M. Pearson, as owners, doing business as Casa Blanca Hotel. The type of organization is checked as a partnership and under the signature line opposite the printed word "Title" appears the typed word "Partner." Pursuant to the application a sales tax permit bearing the same number, i.e., 311505, was issued to Robert G. and Marjory M. Pearson. It must be assumed that the person applying for the sales tax permit was acting in good faith. Fraud is never presumed and "presumptions that the laws were obeyed, that the transactions were fair and regular, and that the ordinary course of business was followed" (*Credit Bureaus of Merced County* v. *Fuller, supra,* 199 Cal.App.2d 495, 499; Code Civ. Proc., § 1963, subds. 19, 20 and 23) are applicable. Mrs. Pearson testified that she took an active part in the management of the hotel business and in the actual construction of the new buildings. Managerial activity is one of the principal elements of a legal partnership. (*Dickenson* v. *Samples,* 104 Cal.App.2d 311, 315 [231 P.2d 530].) While the assumption of managerial control by a spouse may not carry the weight that such conduct on the part of a stranger would imply, it is nevertheless one of the factors to be considered by the fact-finding entity. Taken together, evidence of the existing Pearson-Pearson-Levine partnership, the fact that the Pearsons purchased Levine's interest without terminating the partnership, the designation on the sales tax permit application of a partnership as the type of business organization conducted by Dr. and Mrs. Pearson, and Mrs. Pearson's active role in the management and control of the affairs of the business, justified the trial court's finding that the Pearsons were partners. We do not deem it necessary to discuss the further arguments made in briefs by appellants' counsel, who were substituted in after the trial of this case, in which they attempt to ascribe to the respondents a theory of their case which respondents did not

choose to plead or present to the court below. (See *Toth* v. *Crawford,* 212 Cal.App.2d 827, 830 [28 Cal.Rptr. 343]; *Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669, 681 [9 Cal.Rptr. 90].)

Appellants complain because the court confined its findings to the issues raised by the second cause of action and failed to find on the allegations of the first and third causes of action contained in the cross-complaint and on a counterclaim interposed by respondents as a part of their answer. ▆ Where a complaint or cross-complaint sets forth multiple causes of action based on different legal theories and the court adheres to one theory only, findings made thereon render unnecessary findings on the basic allegations of any other cause of action. (*Vogelsang* v. *Wolpert, supra,* 227 Cal.App.2d 102, 128.) As to the counterclaim, the record discloses that, at the inception of trial, on motion of the plaintiffs and appellants, the complaint was dismissed. Respondents' counsel then advised the court that there was no objection to the dismissal of the complaint "although we will proceed on our cross-complaint." Nothing was said by either counsel relative to reservation of the counterclaim. Trial was had solely on the issues presented by the cross-complaint and the answers thereto. The trial judge was justified in believing that the counterclaim had been abandoned by consent of all litigants. The findings as made adequately cover issues raised by the second cause of action and this is all the court was required to do.

▆ It is next contended that the partnership entity known as Casa Blanca is not a party to this action since it was named in the cross-complaint as Doe Company and all fictitious parties were dismissed from the action by the pretrial order. It is claimed that "the effect of the pretrial order was to dismiss any fictitious parties still named as such and not served as of the time of the pretrial order." That entire order is couched in economical language. Appellants rely solely on the cryptic statement: "Fictitious parties. None." In the light of the interpretation placed thereon by the parties, as shown by the record, we must assume that the court meant only that there were no fictitious parties in the action as to whom the cause was not at issue. Respondents sued Marjory M. Pearson, individually and in her capacity as executrix, and Doe Company. The cross-complaint alleges that the Pearsons "were engaged in business as partners under a common business name, 'Doe Company.'" Subse-

quent allegations sufficiently state a cause of action against the partnership. Marjory, individually and as executrix, answered. By written stipulation, appellants acknowledged service of the cross-complaint on the partnership, Doe Company, and said company adopted Marjory's answer as its own. At the time of the pretrial conference the cause was at issue as to all cross-defendants. At the commencement of trial, cross-complainants' motion to amend the cross-complaint by inserting the name ''Casa Blanca'' for the name ''Doe Company'' was granted and an order made accordingly. There was no objection. To the contrary, appellants' trial counsel helpfully participated in the colloquy between court and counsel which preceded the ruling. The case was then fully tried on all issues including those relating to liability of the partnership, Casa Blanca. On this set of facts, the answer to this contention may be borrowed from *Ragusano* v. *Civic Center Hospital Foundation,* 199 Cal.App.2d 586, at page 590 [19 Cal.Rptr. 118], as follows:

''The case was tried upon the theory that defendant hospital was still in the case. Defendant hospital cites a number of cases such as *Fitzsimmons* v. *Jones* (1960) 179 Cal.App.2d 5 [3 Cal.Rptr. 373], to the effect that the pretrial conference order, if inconsistent with the pleadings, controls, unless modified before trial. Obviously they do not apply to a situation in which the parties interpret the order as they did here, and in which the issues were tried without objection. (See *City of Los Angeles* v. *County of Mono* (1959) 51 Cal.2d 843, 847 [337 P.2d 465], where the court relied upon the interpretation of the pretrial order by the parties.)''

In urging reversal, appellants next claim that the failure of respondents to present and file a claim pursuant to section 707 of the Probate Code against the estate of Dr. Pearson precludes them from maintaining their cross-demand and forecloses recovery thereon. In considering this contention, each appellant must stand separate and alone beneath a different light. First considering the judgment against the surviving partner, Marjory M. Pearson, individually, it is obvious that no claim is required. Even though she had no knowledge of the fraud chargeable to Dr. Pearson, liability attaches under the rule that ''a general partner's liability is the same as that of a principal for the fraud of his agent while acting within the scope of his authority, and this principle applies in cases involving fraud or misrepre-

sentation by a partner in connection with the sale of the partnership property." (*Siebold* v. *Berdine, supra,* 61 Cal. App. 158, 162; *Grant* v. *Weatherholt,* 123 Cal. App.2d 34, 45-47 [266 P.2d 185].) ▮ The respondents' right to recover against Mrs. Pearson is founded upon her liability as a member of the partnership for the fraud of her partner, acting for the partnership, the fruits of which inured to her benefit. The filing or nonfiling of a claim against the estate of her deceased partner does not affect her liability. ▮ Turning to the judgment against the partnership, it has been held that a claim against a partnership, one of the members of which is deceased, does not fall within the ambit of section 707 of the Probate Code, which requires claims against a decedent's estate to be presented or filed in accordance with the statute or be forever barred. (*Corson* v. *Berson,* 86 Cal. 433, 440-441 [25 P. 7].) Upon the death of a partner, the statutory law of this state confers upon the surviving partner "the right to continue in possession of the partnership, and to settle its business" and casts upon him the duty to "account to the executor or administrator, and pay over such balances as may from time to time be payable to him, in right of the decedent." Only the interest of the decedent in the partnership is deemed to be an asset of his estate which must be inventoried and appraised as other property. (Prob. Code, § 571.) Thus, presentation or filing of a claim against the estate of the deceased partner is not a condition precedent to maintenance of suit against the partnership. The judgment could have been obtained against the surviving partner and the partnership without a joinder of the executrix of the deceased partner. (*Corson* v. *Berson, supra,* 86 Cal. 433, 441.)

However, she was joined, and the judgment against her in this capacity is general, entitled to legal enforcement remedies including execution or judgment lien by abstract recorded against the assets of the estate of Dr. Pearson. Therefore, we must be guided by a different set of rules. ▮ It has long been established that for an action to be maintained against the executor or administrator, predicated on fraud perpetrated by his decedent, a claim against the estate of the decedent must be presented in accordance with law. (*Grubb* v. *Chase,* 158 Cal, 352, 355 [111 P. 90].) It has been said that "monetary damages resulting from fraud and deceit constitute an 'injury to property' within the meaning of" section 707. (*Birch* v. *Ciria,* 205 Cal.App.2d 1, 7 [22 Cal.

Rptr. 798].) "Failure to file a contingent claim against the estate is fatal to the prosecution of this action." (*Jacobson* v. *Mead,* 12 Cal.App.2d 75, 78 [55 P.2d 285, 1267].)

Respondents urge that section 707 of the Probate Code is a special defense in the nature of a statute of limitations which may be, and was, waived for failure of the executrix to invoke it as to the amended cross-complaint. As was stated in *Hurlimann* v. *Bank of America,* 141 Cal.App.2d 801, at page 806 [297 P.2d 682], an executrix is "an officer of the probate court charged with the administration of the estate and the protection of creditors and heirs. It is well established that an executor has no power to waive due presentation of a claim which the statute declares must be presented." (*Fontana Land Co.* v. *Laughlin,* 199 Cal. 625, 636-637 [250 P. 669, 48 A.L.R. 1308] ; *Estate of Heigho,* 186 Cal.App.2d 360, 367 [9 Cal.Rptr. 196] ; *Estate of Smith,* 122 Cal.App.2d 216, 218 [264 P.2d 638].) The reason for the rule is set forth by the Supreme Court in *Lewis* v. *Neblett,* 48 Cal.2d 564, at pages 567 and 568 [311 P.2d 489], thusly:

"The reason an administrator is not empowered to waive the defense provided by a statute of limitations in an action against the estate is that he acts as a trustee for creditors of the estate and for the heirs and is not at liberty to deplete the assets of the estate by failing to assert a valid, existing defense."

In support of the judgment against the executrix respondents rely on language contained in *Hays* v. *Bank of America,* 71 Cal.App.2d 301 [162 P.2d 679] ; *Whitmore* v. *San Francisco Savings Union,* 50 Cal. 145; *Bull* v. *Coe,* 77 Cal. 54 [18 P. 808, 11 Am.St.Rep. 235] ; *Anderson* v. *McNally,* 150 Cal.App.2d 778 [310 P.2d 975] ; *Minton* v. *Cavaney,* 56 Cal. 2d 576 [15 Cal.Rptr. 641, 364 P.2d 473] ; *W. H. Marston Co.* v. *Kochritz,* 80 Cal.App. 352 [251 P. 959] ; *Preston* v. *Knapp,* 85 Cal. 559 [24 P. 811] ; *Radar* v. *Rogers,* 49 Cal.2d 243 [317 P.2d 17] ; *Salinas Nat. Bank* v. *Cook,* 101 Cal.App.2d 423 [225 P.2d 253] ; and *San Martin* v. *Superior Court,* 169 Cal.App.2d 14 [336 P.2d 618]. All of those cases and others dealing with the subject have been reviewed. The holdings of those cases are predicated upon their particular facts, bearing no similarity to the facts here involved. As we read the decisions, none of them is a precedent for the proposition that an executor or an administrator may waive complete noncompliance with the statute. None of them deals with a case where no claim at all was presented or filed. None of them is contrary to the rule that, extraordinary circumstances

absent, an executor or administrator lacks power to waive full presentation of a claim which the statute requires. The judgment, insofar as it purports to run against Marjory M. Pearson, in her capacity as executrix of the estate of Dr. Pearson, must be reversed.

Appellants lastly contend that the judgment and decree, in effect, quiets title to the Seal Beach property, and a quiet title decree, under the circumstances and pleadings here involved, is erroneous. No discussion of their arguments and supportive authorities applicable to quiet title actions is required for the decree does not purport to quiet title. The complaint is not one for money damages only. It also claims equitable relief in that, by appropriate allegations and prayer, it seeks a decree declaring that the Seal Beach property, although standing of record in the names of the copartners individually, is an asset of the partnership which the surviving partner holds as trustee for the partnership and its creditors, including the cross-complainants. Such allegations were denied by the answers. Thus, one of the issues framed by the pleadings, fully tried and presented to the trial court for determination was the disputed status of the Seal Beach property as a partnership asset. Upon ample and uncontradicted evidence that the Casa Blanca Hotel, found to have been partnership property, constituted the consideration for the exchange of the Seal Beach property, the trial judge properly traced partnership assets, although changed in form, into the hands of the individual partners.

Partnership property is not placed beyond the reach of creditors of the partnership because it is in the names of the individual partners. (*Geisenhoff* v. *Mabrey*, 58 Cal.App.2d 481, 491 [137 P.2d 36] ; *Stein* v. *Andron*, 55 Cal.App.2d 510, 515 [131 P.2d 39].) The issue having been pleaded and proved, the trial court had authority to determine the status of property as a partnership asset or as the property of the individual partners. (See *Grant* v. *Weatherholt, supra,* 123 Cal.App.2d 34.) This is all that the portion of the judgment of which complaint is here made purports to do. It does not quiet title.

Nor are the heirs of the deceased partner indispensable parties to this action, as appellants belatedly suggest. The partnership assets are in the hands and control of the surviving and liquidating partner who holds as a trustee (*Sibert* v. *Shaver*, 111 Cal.App.2d 833, 839 [245 P.2d 514]) or at least a quasi trustee (*Metzenbaum* v. *Metzenbaum*, 115

Cal.App.2d 395, 398 [252 P.2d 31, 966]) for the interested persons. In a suit brought by a creditor of the partnership against the partnership and the surviving partner, neither the executor (*Minifie* v. *Rowley,* 187 Cal. 481, 483 [202 P. 673]) nor the heirs are indispensable or necessary parties.

We do not here consider the propriety of the order of sale of the Seal Beach property embodied in the judgment, the authority of the court so to do not having been challenged by appellants.

The judgment against Marjory M. Pearson, as executrix of the estate of Robert G. Pearson, deceased, is reversed; the judgment against Marjory M. Pearson individually, and Casa Blanca, the partnership, is affirmed. Respondents shall recover costs on appeal.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 16, 1964.