## ALEXANDER T. STEWART, FRANCIS WARDEN, AND GEORGE FOX *v.* MICHAEL LEVY, AND CASPER GLASS.

DEBT—WHEN FRAUDULENTLY CONTRACTED.—The fraudulent intent of a party to procure goods without payment is consummated when the possession of the goods is obtained without payment on delivery, or on call, according to the terms of sale. The debt, under such circumstances, is fraudulently contracted.

IDEM—LIABILITY OF PARTNERS FOR.—In case of a debt fraudulently contracted by a partnership firm by one member alone, the others being ignorant of the fraud, while all the members will be bound in an action brought on the contract or to recover the property so fraudulently obtained, yet the liability to an action for the fraud, which is essentially different and involves moral turpitude, is limited to the partner committing the same, unless the others assented to the fraud, or ratified it by adopting the act of the fraudulent partner, or retaining its fruits with knowledge of the fraud.

IDEM—DEMAND FOR PRICE NOT NECESSARY.—A demand for the price of goods sold is not necessary to maintain an action against a debtor for fraudulently purchasing the same. Payment, though it would satisfy the debt, would not remove the taint of the fraud, which is the *gravamen* of the action.

IDEM—JUDGMENT IN MAY AUTHORIZE A *ca. sa.*—In such action an issue of fraud

may be framed and tried, and the defendant, upon proper proof, may be adjudged guilty, and the Court may order an execution against the person of the defendant so adjudged guilty of the fraud.

IDEM—PRACTICE ACT, SECTION 72.—The provisions of section seventy-two of the Practice Act has reference to mesne, and not to final process.

FORM OF JUDGMENT—POWER OF DISTRICT COURTS OVER.—The District Courts in this State, by virtue of their organization and common law powers, have full authority, except when limited by the Constitution or Practice Act, to pronounce such judgment as the exigency of each case shall require.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The complaint charges the defendants, as partners, with having purchased certain merchandise from the plaintiffs, in the City of New York, "with a design to defraud the plaintiffs, and not to pay for the same," and asks a judgment against the defendants "adjudging them guilty of a fraud in contracting said debt," and also for the amount of the debt. The complaint also contains certain averments of facts which the plaintiffs allege constitute the fraud.

The defendants, in their answer, admit the purchase of the goods, but deny the fraud, and also deny the facts alleged as establishing the fraud. The evidence tended to prove that the fraudulent purchase complained of was made by defendant Levy, in the City of New York, in the name of his firm, then doing business in said city and in San Francisco. No proof was made that defendant Glass, who was in San Francisco, either had knowledge of the fraudulent nature of the purchase or subsequently ratified it.

Upon the issues thus made, the case was tried by the Court, with a jury, who in their verdict returned answers to certain interrogatories put to them by the Court, and upon the verdict so rendered the Court entered judgment against the defendants for the amount claimed, and also adjudged them guilty of fraud in contracting said debt, and ordered execution to issue against the bodies of said defendants. The defendants moved for a new trial, upon the ground, among others, of the refusal of the Court to give two certain

instructions to the jury, the first of which was as follows: "If the jury shall believe that the goods were purchased in New York in the ordinary course of business, and that the plaintiffs made no demand of the defendants for the payment of the goods before bringing this action, they must find for the defendants on the question of fraud;" which was denied by the Court, and from this order, and also from so much of the judgment as found them guilty of fraud and directed execution to issue against their bodies, the defendants appealed.

The other facts are stated in the opinion of the Court.

*Jarboe & Harrison,* for Appellants.

The Court erred in refusing the third instruction asked by the defendants.

We do not deny the proposition that one partner is responsible for all debts even fraudulently contracted by his copartner; but we maintain that only the one guilty of the fraud is liable to be arrested. (*The Hanover Company* v. *Sheldon*, 9 Abb. 240; *Wetmore* v. *Earle*, 9 Abb. 58.)

The Court erred in giving judgment against the defendants, "that said plaintiffs have liberty to issue execution against the bodies of said defendants."

Such judgment is wholly unauthorized by any law of this State. There is no provision upon the statute books of the State by which a defendant may be arrested or taken into custody upon final process.

Section seventy-two of the Practice Act declares that "no person shall be arrested in a civil action except as prescribed by this Act;" and the only provisions for an "arrest" are those found in Chapter I of Title 5, and relate entirely to "provisional remedies"—*i. e.*, remedies in the nature of mesne process, and whose vitality ceases upon the rendition of a judgment. "The arrest upon affidavit is only intended

to secure the presence of the defendant until final judgment."
(*Davis* v. *Robinson*, 10 Cal. 412.)

If this be so, it follows, necessarily, that an arrest upon
final process can no more be made without express author-
ization to that effect by statute than upon mesne process.

The only cases in which the execution is authorized are
provided for in the first, second, and fourth subdivisions of
section two hundred and ten. The third subdivision pro-
vides that "if it be against the person," etc., "the Sheriff
shall arrest him," etc. Now, the very language of this sub-
division presupposes the prior existence of the execution,
and cannot be used as authority for the issue or creation of
the writ. That language is "*If it be,*" etc.; but unless the
execution has been previously issued, it cannot *be* against
the person. The authority to issue it against the person
must be found elsewhere, and this does not exist. Whether
the omission to place it upon our statute books was inten-
tional or accidental, we have no means of knowing; but we
must suppose it to have been intentional. We are fortified in
this conclusion by comparing the Practice Act of this State
which was passed in 1850, with the present Act, passed in
1851. The Act of 1850, (Sections 176, 178, Stats. 1850, p.
444,) expressly provided for an execution against the person,
and authorized the issue of such writ; but when the Legis-
lature, in the following year, revised the Practice Act, these
sections were expressly omitted, and no provision made for
an execution against the person. The provisions of the
other sections of Chapter XV of the Act of 1850 are pre-
served in some form in the present Practice Act, but the
omission of these certainly leaves the presumption that the
Legislature intended that no person should be arrested on
final process. The second subdivision of section one hun-
dred and seventy-nine of that Act was in harmony with
these omitted sections; but when these cease to have vitality,
that subdivision (now existing in section two hundred and
ten) also ceases to have any force, for the simple reason that
the source of its life is destroyed. But whatever may have

been the cause of the omission of any provision authorizing such writ, certainly the personal liberty of a citizen is not to be taken away upon the presumed intention of the Legislature, when they have failed to carry that intention into effect.

*Doyle & Barber*, for Respondents.

The third instruction asked for was calculated to mislead the jury. The tendency of the instruction requested was that the jury should exonerate the defendant Glass, unless the fraud was committed by him in person. The defendants were partners; the purchase was in their line of partnership business; each was the universal agent of the other for the transaction of all business within the scope of the partnership. Levy, the resident partner at New York, personally perpetrated the fraud, and then absconded with the goods to San Francisco, where the other partner, Glass, resided, and where the goods on their arrival were used by defendants in their business. (*Townsend* v. *Bogart*, 11 Abb. 355; *Coman* v. *Allen*, 21 How. 114; *Smith* v. *Tracy*, 36 N. Y. 79; *Olmsted* v. *Hotailing*, 1 Hill, 318.)

The provision in the judgment that plaintiffs might issue execution against the bodies of defendants was simply unnecessary and immaterial, and therefore cannot be error. The plaintiffs had a legal right to an appropriate execution to enforce their judgment, independently of any provision therefor in the judgment itself. Whenever an arrest is made, it will be time for the defendants to test its validity. But waiving, for the sake of argument, this preliminary objection, we dispute the soundness of the appellants' views on the law of arrest. If we understand the argument of appellants, it is that there can be no right of arrest on final process, because "not prescribed by this Act," (Practice Act.) The very provisions contained in the chapter referred to, relating entirely to the practice to be pursued in preliminary arrests on mesne process, sufficiently indicate the restricted

sense of the word "arrested" in section seventy-two. "No person shall be arrested in a civil action, except as prescribed by this Act." The meaning is obvious from the context. Whenever a party is arrested on mesne process, the proceedings shall be in accordance with Chapter I, Title 5 of the Practice Act, on "Arrest and Bail."

Restricting the meaning of this provision within its true limits, what legal objection is there to the issue of execution against the body in a judgment convicting the defendant of fraud? The appellants say our Practice Act, though it presupposes cases where an execution may have issued against the person, gives no authority for the issue of such process. Neither does it give any authority for the issue of any other kind of process, (except in subdivision four of section two hundred and ten, as to judgments payable in a specified currency,) but leaves the form of the process to be determined by the nature of the judgment. All the provisions of section two hundred and ten of the Practice Act, except that just referred to, equally "presuppose the prior existence" of the several kinds of execution referred to. Are we, hence, to conclude that no execution can be issued against the property of the judgment debtor, because the Practice Act does not specify in what cases an execution of that description may issue? The suggestion that "unless the execution has been previously issued it could not *be* against the person," is equally forcible if the word "property" be substituted for "person;" yet nowhere in the Practice Act is an express authority given for issuing an execution against property.

The Constitution (Art. I, Sec. 15) sanctions imprisonment for debt on final process in cases of fraud; no law prohibits it; the Practice Act presupposes it; the right to final process of imprisonment is, by universal practice, co-extensive with the right of arrest on mesne process. Indeed, a contrary rule would be a practical absurdity.

By the Court, RHODES, J.:

The evidence clearly tended to prove that one of the defendants, Levy, who made the purchase, was guilty of fraud in contracting the debt; and the verdict ought not to be set aside as to him, on the ground that it is not sustained by the evidence.

There was no error in refusing to give the first instruction requested by the defendants. If they, or either of them, fraudulently intended to procure the goods without payment, the fraud was consummated when the possession of the goods was obtained without making payment on delivery, or on call, according to the terms of sale. The debt was then fraudulently contracted. A payment made after that time, though it might satisfy the debt for the price of the goods, would not remove the taint of fraud from the transaction by which the goods were obtained. A personal demand before bringing suit was, therefore, unnecessary.

The third instruction asked by the defendants should have been given. It is as follows: "If the jury shall find from the evidence that the fraud, if any, was committed by the defendant Levy, and not by the defendant Glass, they must acquit the defendant Glass of the charge of fraud." All the partners will be bound by the fraud of one of the partners in contracts relating to the partnership made with innocent third parties. That is to say, all are responsible for the injury occasioned by the fraud, and are liable to an action brought upon the contract, or for the recovery of the property fraudulently obtained, whether they were cognizant of the fraud or not. The rule is the same as it is in respect to the responsibility of the principal for the fraud of his agent, while acting within the scope of his authority; and, indeed, a partner becomes liable for the fraud of his co-partner, because of the relation each bears to the other of agent in the partnership business. But such responsibility is essentially different from a liability to a judgment for fraud, upon an issue joined as in this case. The fraud upon which the

judgment proceeds is actual, intentional fraud, and implies moral turpitude. It needs no argument to prove that one partner cannot be adjudged to be guilty of a fraud of that character, committed without his knowledge or assent, and which he neither assents to nor ratifies by adopting the act of his copartner, with knowledge of his fraud. We need not review the authorities cited by counsel, for it will be conceded that if the partner adopts or acquiesces in the fraud of his copartner, or retains the fruits of the transaction with a knowledge of the fraud, he also is guilty of the fraud. The instruction does not question this position, but it takes the ground that Glass, if he did not commit the fraud, must be acquitted, though his partner might be guilty—that he should not be adjudged guilty because of the guilt of his partner. If intentional and actual fraud must be shown in order to sustain the issue on the part of the party alleging the fraud, and if "fraud is an offense involving moral turpitude, and is followed by imprisonment, not merely as a means of enforcing payment, but also as a punishment," (*Davis* v. *Robinson*, 10 Cal. 411,) we have no hesitation in saying that the reasoning of the majority of the Court in *Townsend* v. *Bogart*, 11 Abb. 355, to sustain the position that if one party is guilty of fraud, all the parties are in judgment of law guilty, and that the acquiescence of all in the fraud of one is presumable from the existence of the partnership, does not meet with our approbation.

The defendants object to that portion of the judgment authorizing the plaintiffs to have execution against the bodies of the defendants, on the ground that there is no provision of the statute authorizing the defendants to be arrested upon final process. There is no provision expressly authorizing an execution against the person, but the third subdivision of section two hundred and ten provides that: "If it be against the person of the judgment debtor, it shall require the Sheriff to arrest such debtor, and commit him to the jail of the county, until he pay the judgment, with interest, or be discharged according to law." The Act of April

22d, 1850, as amended in 1863, provides for the discharge of a prisoner "confined in jail on an execution or order issued on a judgment rendered in a civil action." Both of these Acts contemplate that an execution may be issued against the person of the defendant in a civil action. In *Matoon* v. *Eder*, 6 Cal. 57, the point as to the kind of writ that might be issued upon a judgment for fraud did not arise, but the opinion clearly shows that the Court regarded a *ca. sa.* as proper in such case. In *Davis* v. *Robinson, supra,* the question was, whether the issue of fraud of the defendant in disposing of his property should be determined upon the affidavit of the plaintiff upon which mesne process of arrest was issued, and the counter affidavit of the defendant; and in considering that question, the Court mentioned an execution against the person of the defendant to enforce a judgment for fraud, as if there could be no doubt about its being the proper writ, and added, that it could issue only upon the order of the Court to that effect. This practice, we understand, has been followed from the organization of the Courts in this State to the present time. The issue of fraud evidently may be framed and tried, and the defendant may be adjudged guilty upon proper proof; and as the Constitution does not prohibit, but, by implication, authorizes imprisonment for fraud, we see no valid objection to the Court's ordering an execution against the person of the defendant adjudged guilty of fraud. The provision of section seventy-two, that "no person shall be arrested in a civil action except as prescribed by this Act," has reference to mesne and not final process. It would be an absurd provision of the law to authorize the arrest of a party upon being accused of a fraudulent act, and to require his discharge upon his being found guilty. There are but few cases in which the Practice Act has prescribed the form of the judgment, and section two hundred and ten seems to have been framed on the theory that the Courts, by virtue of their organization and common law powers, had full authority, except when limited by the

statute, to pronounce such judgment as the exigencies of each case required.

The portion of the judgment appealed from affirmed as to defendant Levy, and reversed as to defendant Glass, and cause remanded for a new trial as to Glass.

Mr. Justice SAWYER expressed no opinion