[Civ. No. 4369. First Appellate District, Division Two.—February 27, 1923.]

## JOHN E. SIEBOLD, Respondent, v. E. S. BERDINE et al., Appellants.

[1] FRAUD—SALE OF BAKERY—SUFFICIENCY OF EVIDENCE.—In this action for damages for fraud and deceit arising out of the sale of a bakery, the evidence supports the findings on the different specifications of fraud, and the findings support the judgment.

[2] ID. — WAIVER OF FRAUD — INSUFFICIENCY OF EVIDENCE. — Where a bakery was purchased in reliance upon fraudulent representations relating to the profits and income of the business and as to the cost of equipping and installing the business, the fraud was not waived by completing the transaction and accepting the offer of the seller to repurchase the property after the purchaser knew or had the means of knowing that the representations as to the profits and income were untrue, where no knowledge had been acquired of the falsity of the representations as to cost of equipment and the seller assured the purchaser that the income would increase later in the year.

[3] PARTNERSHIP—FRAUDULENT SALE—LIABILITY OF SPECIAL PARTNER. A special partner who fails to comply with the provisions of sec-

tions 2477 and 2501 of the Civil Code, relating to special partnerships and the limitation of their liability, is liable in damages for a fraudulent sale of the partnership business, although he took no part in the transaction and had no knowledge of the fraud.

APPEAL from a judgment of the Superior Court of Alameda County. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ernest K. Little and James P. Montgomery for Appellants.

Jesse Robinson, Robinson & Sizer and Clarence De Lancey for Respondent.

NOURSE, J.—This is an action for damages for fraud and deceit arising out of the sale of a bakery. The sale was made on the fourteenth day of January, 1920, at which time $7,598.81 was paid to the defendants as part of the total purchase price of $12,598.81, the balance of which ($5,000) was agreed to be paid on or before January 28th of the same year. Plaintiff entered into possession on the fifteenth day of January, and on the 29th of January paid to the defendants the sum of $4,677, which at that time the parties agreed was the proper amount to be paid after making certain deductions following their inventory of the stock in trade. Plaintiff elected to stand upon his contract and to sue for the fraud. Evidence was offered that the market value of the property at the time of the sale was $7,500, and thereupon the court rendered judgment in favor of the plaintiff in the sum of $5,098.81.

The plaintiff relied upon four specifications of fraud consisting of representations made by the defendant Berdine to the plaintiff as inducements for the sale: (1) That the business had been yielding an average net profit of $200 or more per week; (2) that there was on hand as part of the inventory of said business 120 sacks or 60 barrels of "Minodak flour"; (3) that the cost of certain fruits inventoried at the time of the sale was 147 cases at $7.25 per case; and (4) that the actual and true cost of equipping and installing said business, plus cost of fixtures, stock in trade and baking materials, was the sum of $12,598.81.

The trial court found that all the allegations of the complaint containing the specifications of fraudulent representations were true, that these representations were false, and that there was no waiver on the part of the plaintiff.

The judgment which followed is attacked upon the ground that the evidence does not support these findings, and also that whatever fraud was committed and whatever misrepresentations were made were waived by the respondent before he made his final payment upon the contract.

[1] Upon the first specification of fraud there is evidence in the record to support the finding that at the particular time in question the average weekly net profit of the business did not amount to $200. There was evidence to show that respondent took possession of the premises at a particularly unfavorable period of the year and that both the receipts and profits were higher at different periods of the year, a fact which was made known to the respondent before he consummated the purchase. However, there is evidence to support the finding of the trial court that these representations made by the appellants were untrue and that the respondent relied upon them to his injury. The same may be said as to the finding relating to the representations covering the number of sacks of flour which were included in the sale, although it is evident that these representations resulted from mistake on the part of appellants rather than fraud and that they had no possible connection as an inducement for the sale, the mistake having been discovered long before the sale was consummated and having been adjusted by the parties before the final payment was made.

The finding relating to the cost of certain fruits inventoried at the time of the sale is not supported by the evidence. The claim is that the appellants represented to the respondent that the cost of this fruit was $7.25 per case, whereas the cost was $7.25 for two cases or one dozen. The evidence is that when the parties were going over the inventory the respondent inquired as to the cost of this fruit and one of the appellants showed him an invoice from a dealer for the sale of baker's apples at $7.25 a dozen. The evidence then was that the parties agreed upon a sum of $7.25 a case for all the 147 cases of fruit, which the respondent testified consisted of apples, peaches, cots, squash, blackberries, and various other fruits. It is in evidence, however,

that the true cost price of some of these fruits ranged from
$10 to $16 a dozen (two cases), which would make the cost
price of such fruits from $5 to $8 a case.   The court found
that the value of the 147 cases was at the rate of $7.25 for
two cases, and, as we have said, there was no evidence to
support this finding.

The fourth specification of fraud relates to a misrepre-
sentation as to the cost of equipping and installing the busi-
ness, plus cost of fixtures, stock in trade and baking mate-
rial.   Upon this issue the evidence took a wide range and
consisted mainly of the opinions of witnesses as to the value
of the equipment, fixtures, and stock.   The trial court found
that the cost was less (how much less does not appear) than
the sum which the appellants represented it to be.   There
was some evidence to support the finding, and in view of the
conflict which arose this finding should not be disturbed.
The findings on specifications 1, 2, and 4 are sufficient to
support the judgment.

[2]   The appellants insist that the judgment should be re-
versed as to all the appellants upon the ground that the
alleged fraud was waived, and that it should be reversed as
to the appellant Hogarty, as he was a partner who had no
part in or knowledge of the alleged fraud.   The claim of
waiver is based upon the fact that after respondent had
made the first payment upon the purchase price and had en-
tered into possession of the premises, and while title still re-
mained in the appellants, he discovered the facts upon which
his allegations of fraud are based, but, nevertheless, com-
pleted the transaction by making the payment and accepting
from the appellant Berdine his offer to repurchase the prop-
erty if the representations regarding the income proved to
be untrue.   The weakness of the position of appellants is
that there is no evidence to show that at the time the trans-
action was completed the respondent had any knowledge
that the true cost of equipping and installing the business,
plus cost of fixtures, stock in trade and baking materials,
was less than the sum represented by appellants.   It does
appear that prior to that time respondent knew or had the
means of knowing that the representations relating to the
profits and income of the business and to the quantity of
flour were untrue.   It is in evidence that respondent made
complaint regarding these representations in a very few

days after he took possession of the premises on January 15, 1920, and that it was because of his knowledge of those facts that he demanded and received from the appellant Berdine the offer to repurchase. This, however, cannot be taken as a waiver of all the fraudulent misrepresentations specified in the complaint. The offer to repurchase related solely to the matter of income from the business. It was given at a time of the year when the income from the bakery business was confessedly below the ordinary, and was simply an additional inducement to persuade the respondent to complete his contract during this period and before he would have an opportunity to convince himself that at a later time in the year this income would increase. It was nothing more than an assurance in writing that the alleged misrepresentations regarding the income would prove true upon investigation and experience after the contract had become fully executed. It is insufficient in itself to constitute evidence of waiver of the alleged fraud or misrepresentations.

[3] As to the appellant Hogarty, it appears that he was a special partner having a limited interest of $500 in the partnership and that upon the consummation of the sale that sum had been returned to him. There is no evidence, however, that he had complied with the provisions of the Civil Code (secs. 2477 and 2501), relating to special partnerships and the limitation of their liability. It is in evidence that he took no part in the transactions leading to the sale and had no knowledge of the alleged fraud or misrepresentations upon which the action is founded. However, a general partner's liability is the same as that of a principal for the fraud of his agent while acting within the scope of his authority, and this principle applies in cases involving fraud or misrepresentation by a partner in connection with the sale of the partnership property. (20 R. C. L., pp. 916, 917.)

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.