**DOUGLAS RESERVOIRS WATER USERS ASSOCIATION, Appellant (Plaintiff below),**

v.

**MAURER & GARST, a partnership, and Joseph Garst, individually, Appellees (Defendants below).**

No. 3265.

Supreme Court of Wyoming.

Jan. 7, 1965.

Arthur F. Fisher, Casper, for appellant.

W. J. Wehrli, Casper, John Patrick Hand, Douglas, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Suit was brought in the district court in Converse County against the dissolved partnership of Maurer & Garst and against Joseph Garst individually, seeking to recover $40,100 and interest for sums alleged to have been embezzled by R. C. Maurer, now deceased, who was a member of the partnership in his lifetime.

Parties appear to have made good use of the discovery procedures provided for in our rules of civil procedure, through the use of interrogatories and depositions. Thereafter, defendants filed an affidavit made by Garst and moved for summary judgment claiming there was no genuine issue as to any material fact, and that defendants were entitled to judgment as a matter of law. A counter-affidavit was filed by plaintiff. The motion was sustained and summary judgment was entered for defendants. Plaintiff has appealed.

The existence of a partnership for the practice of law over a long period of years, between R. C. Maurer and Joseph Garst, is admitted. There is no substantial or material dispute of the facts asserted by the parties. For purposes of our decision, we will accept what plaintiff claims to be the undisputed facts.

According to plaintiff's version of the facts, Maurer received a check for $10,-000 in 1948 from the United States, made payable to Harcourt Land Company, a company which Maurer personally owned or controlled. This $10,000 was for the benefit of and should have been turned over to plaintiff, Douglas Reservoirs Water Users Association. Maurer was the secretary-treasurer of Douglas Reservoirs Water Users Association. He was to pur-

chase a United States Government bond with the $10,000.00, in the name of plaintiff-association. Instead, he deposited the proceeds of the check in his personal checking account and appropriated them to his own use.

Also, according to plaintiff's version of the facts, Maurer drew a check, on January 31, 1953, upon the checking account of plaintiff, in the sum of $5,100 and made payable to R. C. Maurer, Trustee. The check was deposited in his own personal account in another bank and the proceeds were appropriated to his own use.

On May 25, 1953, as plaintiff states the facts, Maurer wrote a check upon the checking account of plaintiff, in the sum of $5,000 and made payable to R. C. Maurer, Administrator, Roby L. Burkett Estate. This check was deposited in another bank in the name of the Burkett Estate and used to make up for funds which Maurer either had previously embezzled or subsequently embezzled out of the Burkett Estate.

Considering the facts and all reasonable inferences therefrom in the light most favorable to plaintiff, we must decide whether Maurer could be said to be acting within the scope of his apparent authority as an agent of the defendant-partnership when he performed the acts complained of, or whether any of the money in question was received by the partnership in the course of its business.

Section 17-208, W.S.1957, of our Uniform Partnership Act, states:

"The partnership is bound to make good the loss:

"(a) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and

"(b) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership."

There is nothing in the testimony or affidavits presented to indicate that any of the money here involved went into partnership funds or that any of it was actually received by the firm of Maurer & Garst. Instead, all of it went into the personal account of Maurer.

No doubt the probating of the Burkett estate was a partnership function. However, aside from the fact that none of the funds in question went into a partnership account, the receipt of such funds through the commission of a larceny or embezzlement by Maurer could not be said to be in the course of the partnership business. See In re Steinmetz' Estate, Sur., 1 N.Y.S.2d 601, 605.

The authority of a partner to act as agent for his partnership is limited to such transactions as are within the scope of the partnership business; and neither the partnership nor other partners are bound by the unauthorized act of one partner in a matter not within the apparent scope of business of the partnership. Swanson v. Webb Tractor & Equipment Co., 24 Wash.2d 631, 167 P.2d 146, 154–155; Refinite Sales Co. v. Fred R. Bright Co., 119 Cal.App.2d 56, 258 P.2d 1116, 1119.

Neither a partnership nor its innocent partners are liable for a conversion which is not effected in the course of the firm's business. This is commonly held to be true even though the converted property is subsequently used in the business of the partnership, if the other partners had no actual knowledge of the unlawful origin of the property. Hull v. Minkler, 51 Wash. 2d 508, 319 P.2d 815, 820; First Nat. Bank of Portland v. Connolly, 172 Or. 434, 138 P.2d 613, rehearing denied 143 P.2d 243.

We have no doubt, as stated in the Hull case, that if the property remains intact or identifiable while in the hands of the partnership, the claimant might follow the property into the hands of the partnership and recover it. In the case at bar, however, as we have already indicated, the $5,000 which allegedly went into the Bur-

kett estate did not go into the partnership and did not remain intact.

Counsel for appellant-association admits Garst did not take part in, received no benefit from, and had no knowledge of the misapplication of plaintiff's funds. The pleadings, affidavits, interrogatories and depositions fail to show that the activities out of which the defalcations arose constituted a partnership matter. For all that appears such defalcations arose out of Maurer's own private deal and not in the course of partnership business.

The same situation prevails in connection with the alleged embezzlement of $5,100 on January 31, 1953. In that case the money went directly into the personal checking account of Maurer and not through anything similar to the Burkett estate account.

█ The authority of a partner to bind his copartners is based on agency. Ellis v. Mihelis, 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7, 13; Aetna Casualty and Surety Company v. Wofford, Okl., 296 P.2d 967, 971, 60 A.L.R.2d 821; Mading v. McPhaden, 50 Wash.2d 48, 308 P.2d 963, 966. In the instant case, plaintiff's claim fails, both as to the $5,000 and $5,100 embezzlements, for the reason that there is no evidence from which it could be inferred that Maurer acted as an agent for Maurer & Garst when he stole money out of plaintiff's bank account.

If plaintiff's allegations are correct, that is what Maurer's withdrawal of funds amounted to. As far as our decision is concerned, however, we do not pretend to say whether the allegations are correct. We merely say, if they are correct, there would be no basis for holding Garst nor the firm of Maurer & Garst responsible.

Concerning the $10,000 check of the United States which was issued to Harcourt Land Company, in view of the granting of summary judgment we must accept the fact that this money belonged to plaintiff and was entrusted to Maurer for the purchase of a government bond, while he was a member of the firm of Maurer &

Garst; and that he misappropriated the funds to his own use.

Maurer personally and individually owned or controlled Harcourt Land Company. We understand from the record that he was connected with Douglas Reservoirs Water Users Association both as a member, because of his personal holdings, and as attorney. We cannot tell from the record whether he was made secretary-treasurer of the association because he was a member of such association or because he was an attorney. The question therefore arises as to whether the $10,000 was entrusted to Maurer in his capacity as a member and officer of the association or as an agent of the law firm of Maurer & Garst.

There is nothing to indicate that legal work had been involved in collecting money from the United States for Douglas Reservoirs Water Users Association, or that the $10,000 check had been entrusted to Maurer for a transaction ordinarily performed by lawyers. We can understand that a bank, or brokers, or an executive officer of a company or association might be called upon to cash a check and purchase a bond, but it would be difficult to say that a law partnership existed for the purpose of handling such transactions.

In Rouse v. Pollard, 129 N.J.Eq. 47, 18 A.2d 5, affirmed 130 N.J.Eq. 204, 21 A.2d 801, 803, 136 A.L.R. 1105, it was said a client, who received a legal service from a partner of a law partnership, had no justification for relying upon the responsibility of the partnership for any disconnected service assumed by the partner outside one that was characteristically within the practice of law.

Hence, when the partner accepted money from the client for the purpose of investing it in mortgages or other investments, the court held that acceptance of money for investment purposes by a member of a law firm was not within the scope or apparent scope of the firm's business. For other cases to the same effect see In re Steinmetz' Estate, Sur., 1 N.Y.S.2d 601, 605;

and Riley v. Larocque, 163 Misc. 423, 297 N.Y.S. 756, 764.

■ We think the general rule applicable, in determining whether a partnership is liable where one of its partners has performed a disconnected service, may be taken from what is said in 68 C.J.S. Partnership § 140, pp. 575–576. The authority of the partner necessarily depends on, and is limited by, the scope or apparent scope of the partnership business; and where the scope of the business is enlarged, the firm is not bound as to an act within the enlarged scope of the business but beyond its ordinary or usual scope.

■ Thus, as concluded in the section referred to, where a person deals with one of the partners in a matter not within the scope of the partnership, the intendment of the law will be that he deals with him on his own private account. See Fortugno v. Hudson Manure Company, 51 N.J.Super. 482, 144 A.2d 207, 215; and Booth Fisheries Corp. v. Eardley, Tex.Civ.App., 233 S.W. 2d 872, 875.

■ In the case at bar, according to the allegations, Maurer performed certain services for plaintiff aside from the transaction here in question. Whether these were performed by him as a member and offi-

cer of the Douglas Reservoirs Water Users Association or by him in his capacity as a lawyer is not material. There is no showing that the duty of cashing plaintiff's check and purchasing a government bond was undertaken by him as a part of, or within the ordinary and usual scope of, the partnership business.

We must consider, from the undisputed facts present in this case, either that Maurer was called upon to perform this duty as a member and officer of Douglas Reservoirs Water Users Association, or if not that, it was in any event a service disconnected from the scope and apparent scope of the business of practicing law by Maurer & Garst. Maurer had no authority as an agent of the partnership to enlarge the scope of the partnership business beyond its ordinary and usual scope, which was the practice of law, and the $10,000 received by him was not received in the ordinary course of the business of Maurer & Garst partnership.

There was then, even under plaintiff's version of the facts, no genuine issue as to any material fact, and the matters before the court failed to show any liability on the part of defendants. Accordingly, summary judgment was properly entered.

Affirmed.