Ron WALES, d/b/a Video, U.S.A.,
Appellant (Defendant),

v.

Ross M. ROLL and Vicki Franke, a Wyoming Partnership, d/b/a RV Enterprises, Appellees (Plaintiffs).

No. 88–166.

Supreme Court of Wyoming.

Feb. 24, 1989.

John C. Hoard, Casper, for appellant (defendant).

J. Stan Wolfe, Gillette, for appellees (plaintiffs).

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and BROWN, J., Retired.

MACY, Justice.

This is an appeal from a summary judgment in a replevin action ordering appellant Ron Wales, d/b/a Video, U.S.A., to deliver business properties to appellees Ross M. Roll and Vicki Franke, d/b/a RV Enterprises, upon a finding that Roll and Franke had a continuing security interest notwithstanding a subsequent sale of the property by the debtor to Wales.

We affirm.

Wales generically states his issue to be:

Did the District Court err in granting Appellees' Motion For Summary Judgment because genuine issues of material fact existed and the Appellees were not entitled to judgment as a matter of law?

Specifically, Wales questions whether it was error for the court to permit Roll and Franke to support their motion for summary judgment with untimely filed depositions and whether the acts of one partner caused Roll's and Franke's security interest to become unenforceable against Wales' possessory rights to business properties. These are questions of law, the answers to which depend upon the facts of this case. The material facts in this case are not in dispute.

Roll and Franke were the two members of a partnership known as RV Enterprises which owned and operated a video rental agency in Gillette, Wyoming. During the month of June 1986, RV Enterprises listed the video business for sale with Century 21 Sun Agency of Gillette, Wyoming. Wales made an offer to purchase the business for $85,000. Roll said he would give his consent to sell the business for the price offered if Century 21 would accept a $2,500 commission rather than a commission of seven percent of the selling price. Century 21 refused to take a lesser commission.

Franke, Monte G. Schulte (a defendant below), and Wales reasoned that they could satisfy Roll's minimum cash price by structuring a sale to Schulte since they believed this sale would not generate an entitlement to a real estate commission. To facilitate this plan, Schulte entered into a written contract with RV Enterprises on December 31, 1986, to purchase the business for $86,-850 by paying $50,000 in cash down and the $36,850 balance plus ten percent interest thereon on or before March 6, 1987. Concurrent with signing the purchase agreement, Schulte signed a security agreement granting RV Enterprises a security interest in the business assets to secure the balance of the purchase price. Wales provided Schulte with the down payment but was unable to obtain a bank loan to pay the balance of the purchase price.

On February 23, 1987, Wales entered into a written agreement with Schulte to purchase the business for $90,000 by paying $55,000 in cash and thirty-six monthly payments of $1,000 each. The additional $1,000 payment was Schulte's fee for acting as the straw man. Franke prepared this contract and signed it to evidence her responsibility for it. Roll first became aware that Franke, Schulte, and Wales had engaged in the straw man transaction after Schulte failed to pay the balance due under the RV Enterprises/Schulte contract.

On July 17, 1987, RV Enterprises filed a complaint against Schulte and Wales, alleging the existence of the two contracts, the security agreements, and the default and praying that RV Enterprises' security interest in the property be declared superior to the contracts, that the property be assembled, delivered, and sold, and that judgment be entered against Schulte for any deficiency remaining after sale. Wales timely filed his answer alleging a plethora of affirmative defenses which included fraud on the part of RV Enterprises by conspiring with Schulte to induce Wales to buy the business so that they could keep Wales' $50,000 after Schulte intentionally failed to make the balloon payment pursuant to the terms of the RV Enterprises contract. Schulte failed to answer, and default was entered against him.

After the action progressed through the court's case management schedule, the parties each filed a motion for summary judgment stating that they would rely upon the depositions of Wales, Roll, and Franke. On March 8, 1988, the court filed its order allowing RV Enterprises to file these depositions. On April 26, 1988, the court also signed a similar order which was filed April 27, 1988.

On April 26, 1988, immediately prior to the hearing on the cross-motions for summary judgment, Wales objected to the use of unfiled depositions by RV Enterprises in support of or in opposition to the motions. The following colloquy took place:

MR. WOLFE: I have a motion in my file that has been filed, motion for filing discovery depositions, and I filed this on March 4th, which asks for the filing of the depositions of Wales, Franke and Roll.

THE COURT: You're right; that was filed.

MR. WOLFE: I would renew that motion at this time and present the court with copies of their depositions.

MR. O'NEIL: Your Honor, that's exactly what I was talking about.

I'm in receipt of a copy of that motion. I would stipulate on that to the court, but Rule, Uniform Rule # 302(b) says at the time of filing of the motion. If the court ruled on that motion later or today, that's not sufficient under the Uniform Rules.

THE COURT: Well, the court should have ruled on that earlier, and that's my fault for not doing that.

Are you claiming some sort of surprise, Mr. O'Neil, by the use of those depositions, noting, of course, that you used part of those depositions in your motion?

Because, if you are, we'll simply put off hearing this motion until you've had sufficient time to make any responses you think are appropriate and proceed at that time.

But I can see no reason why the court should not consider those depositions. The appropriate motion was made, and the court simply failed to rule on it through oversight, or whatever.

But we can either go ahead and use them now, or, if you don't wish to do that, we'll simply reset this hearing at a time so that we're in compliance, strict compliance with the Rules of Civil Procedure.

MR. O'NEIL: Well, Your Honor, I can't claim surprise in that in the motion it is mentioned that he's going to use the depositions in reliance.

I guess my problem is using the entire depositions. I'm not—really haven't been given notice of exactly what portions of the depositions are going to be used or the basis of the argument.

But I'm familiar with the depositions, Your Honor, all three of them.

THE COURT: Well, if you are familiar with all three of them we're simply going to proceed today then.

And at the close of this, if there is any need for you to make further response, I will allow you the additional time to do that.

You may proceed with your argument, Mr. Wolfe.

Wales and RV Enterprises, through their attorneys, then extensively referred to the depositions to support their respective motions.

On April 27, 1988, the court filed its order granting RV Enterprises' motion for summary judgment and denying Wales' motion upon findings that:

9. In accordance with W.S. § 34–21–935(b), a security interest in collateral continues notwithstanding its sale, exchange or disposition, unless the disposition was authorized by the secured party.

10. There is no evidence of RV Enterprises authorizing Schulte to sell the subject property to Wales unencumbered by the security interest.

On May 6, 1988, the court filed its judgment in which it incorporated by reference the April 27, 1988, order and in which it ordered Wales to assemble and deliver the business assets to RV Enterprises. It is from this judgment that this appeal has been taken.

## FILING DISCOVERY DEPOSITIONS

■ The purpose behind the requirement for filing discovery documents concurrently with filing a motion for summary judgment[1] is to afford a responding party a meaningful opportunity to challenge the documents submitted. *Macaraeg v. Wil-*

---

**1.** Rule 302(2) of the Uniform Rules for the District Courts of the State of Wyoming provides in part: "At the time of filing a motion for summa-

ry judgment the movant shall designate and file relevant portions of the discovery documents relied upon."

*son,* 749 P.2d 272 (Wyo.1988). We recently held, however, in *Atlas Construction Company v. Slater,* 746 P.2d 352 (Wyo. 1987), that the failure to file depositions at the time of filing a motion for summary judgment is not reversible error unless it affects a substantial right.

Wales has failed to demonstrate to this Court how he was prejudiced by RV Enterprises' failure to timely file the depositions it used to support its motion for summary judgment. The record, however, reflects that, in addition to the court entering two orders allowing RV Enterprises to use the subject depositions, the court offered to vacate and reset the hearing if Wales was in any way surprised by their use. Wales not only disclaimed surprise or unfamiliarity, he used the same depositions to support his motion for summary judgment without having filed them at the time he filed his motion.

The depositions were before the court when it ruled on the motion for summary judgment and, like in *Atlas Construction Company,* the failure of RV Enterprises to timely file the depositions was a technical imperfection which did not affect a substantial right of Wales and was not reversible error.

### VALIDITY OF SECURED TRANSACTIONS

Wyo.Stat. § 34–21–935(b) (1977) provides:
Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Wales attempts to avoid the effect of this statute by reasoning that Franke's participation in what he characterizes as fraudulent transactions should cause the RV Enterprises/Schulte contract and security agreement to be unenforceable. We do not agree. Assuming arguendo that Franke's actions are either fraudulent, unlawful, or against public policy, there is no basis for imputing such actions to RV Enterprises.

Wyo.Stat. § 17–13–301(b) (1977) provides:
An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.

Although Franke was authorized to carry on the video rental business in the usual way, she did not have the authority to sell the business assets of RV Enterprises without the consent of Roll. Her conduct with Schulte in their dealings with Wales was "not apparently for the carrying on of the business of the partnership in the usual way." Thus, her conduct did not bind the partnership "unless authorized by the other partners." It is undisputed that Roll did not consent to, or have prior knowledge of, the sale of the business property to Wales through Schulte as a straw man, or otherwise. Since Roll did not authorize Franke's conduct, her conduct did not bind the partnership.

We hold as a matter of law that it was not error, under the circumstances of this case, for the district court to permit RV Enterprises to use unfiled depositions to support its motion for summary judgment and that the alleged acts of Franke did not undermine RV Enterprises' security interest in the property sold to Schulte, notwithstanding the subsequent sale to Wales.

AFFIRMED.

URBIGKIT, J., files an opinion concurring in part and dissenting in part.

URBIGKIT, Justice, concurring in part and dissenting in part.

### WAIVER OF NON–COMPLIANCE WITH RULES FOR SUMMARY JUDGMENT

I would take a different path in analysis to overlook movants' error which permitted trial court consideration of depositions when it ruled on the motions for summary judgment. With their motion for summary

judgment filed on March 4, 1988, appellees (Franke–Roll) cited reliance on their brief and "depositions of Ron Wales, Vicki Franke and Ross M. Roll." On the same date, they filed a Motion to Allow Filing of Discovery Depositions without attaching the depositions.[1] Also on that same day, appellant, Ron Wales (Wales), filed his motion for summary judgment relying on a properly attached affidavit and designated portions of several depositions for evidentiary support. After Franke–Roll filed their request for authority to file the depositions, the approving court order was granted on March 8, 1988. However, Franke–Roll did nothing further to either file or present the depositions to the trial court prior to hearing. An earlier pretrial order had given each party the right to file a motion for summary judgment which also set a date for hearing of April 26, 1988. When that hearing convened, Franke–Roll had not filed any depositions or other documents to supply evidence to support their motion for summary judgment and, in fact, the depositions were not actually filed with the clerk's office until June 22, 1988. Clearly, Franke–Roll were not in compliance with our summary judgment rule, W.R.C.P. 56.

Immediately upon commencement of this hearing, Wales, as respondent to the motion for summary judgment, objected to consideration of either the Franke–Roll motion or any rejection of his cross-motion for summary judgment if either would be based on a consideration of the then unfiled depositions. Of course, Wales urged the consideration of the excerpts which had been reproduced and properly submitted by him. Responsive to that objection as quoted in more detail in the majority decision, Wales was given the right to claim surprise and ask for a continuance:

Are you claiming some sort of surprise, Mr. O'Neil [attorney for Wales], by the use of those depositions, noting, of course, that you used part of those depositions in your motion?

Because, if you are, we'll simply put off hearing this motion until you've had sufficient time to make any responses you think are appropriate and proceed at that time.

But I can see no reason why the court should not consider those depositions. The appropriate motion was made, and the court simply failed to rule on it through oversight, or whatever.

But we can either go ahead and use them now, or, if you don't wish to do that, we'll simply reset this hearing at a time so that we're in compliance, strict compliance with the Rules of Civil Procedure.

---

1. It appears that attachment of the depositions or other discovery material to a motion when originally presented might deter some of the problems now found in this case. Some of these same concerns were posed in *Matter of Estate of Obra,* 749 P.2d 272 (Wyo.1988) and *Atlas Const. Co. v. Slater,* 746 P.2d 352 (Wyo. 1987). If the motion to file is denied, which almost never would occur, the clerk could arrange to return the documents to the litigants as is now done with exhibits and like material when the case is no longer pending. The original non-filing process in Wyoming courts is the product of the space limitation in the clerks of court offices who convinced the district courts to adopt Rule 302 of the Uniform Rules for the District Courts, which states:

    Discovery documents shall not be filed except:

    (1) At the time of filing of a motion to compel discovery or a motion for protective orders, the moving party shall file relevant portions of the documents upon which the motion is based.

    (2) At the time of filing a motion for summary judgment the movant shall designate and file relevant portions of the discovery documents relied upon. The opponents of a summary judgment motion shall designate and file relevant discovery documents within the time allowed by Rule 56, W.R.C.P.

    (3) A notice of discovery proceedings may be filed to demonstrate substantial and bona fide action of record toward disposition to avoid dismissal for lack of prosecution.

    The validity of a rule denying right to regularly or promptly file discovery motions and resulting documentation has never been considered by this court. However, the explicit notice requirement of Rule 302 and W.R.C.P. 56, which reoccurs here, has been given significant consideration in *Torrey v. Twiford,* 713 P.2d 1160 (Wyo.1986); *Hickey v. Burnett,* 707 P.2d 741 (Wyo.1985); and *Kimbley v. City of Green River,* 642 P.2d 443 (Wyo.1982).

Lacking either Wales' contention of surprise or a specific request for a continuance, the hearing continued.

The majority justifies the result by finding an absence of prejudice to Wales to vindicate Franke–Roll's violation of W.R.C.P. 56 in failing to support their motion for summary judgment by filing evidentiary documents prior to commencement of the hearing. I do not find that approach persuasive, inviting or desirable to the orderly and effective administration of justice; simply, that view only permits non-compliance with this court's established rules of procedure. Contrary to the majority's stance, this case is not in any way similar to *Atlas Const. Co. v. Slater*, 746 P.2d 352 (Wyo.1987), where the depositions, mutually taken, had been furnished to the trial court months before hearing and the only step not taken was physical delivery by the court to the clerk for affixation of a file stamp. Where the depositions have been delivered to the trial court but not filed in the clerk of court's office, I agree that non-filing alone should not be a basis for reversal if not prejudicial, but that is not the case before us.

Conversely, I find the waiver concept of *Matter of Estate of Obra*, 749 P.2d 272 (Wyo.1988) directly applicable as providing the proper inquiry that we should take here for disposition of this summary judgment rule violation. Counsel for Wales was given an option by the trial court to either request a continuance or to proceed with the late filed documentation. It could be a tough decision, but the trial court has to move litigation. Consequently, opportunity to later assert error for appellate purposes was waived when counsel for Wales did not request the continuance to protect his rights.

When the majority applies prejudice rather than waiver, I am concerned that it sends the wrong message to the bar that it is acceptable to disregard court rules unless the other litigant can responsively establish that intangible effect called prejudice as an affirmative defense. There is, in the nature of things, intrinsic prejudice in permitting one litigant to ignore rules while requiring compliance by another. This very intrinsic prejudice occurred here. Non-compliance is non-compliance, and I cannot countenance that the actor, not the victim, should assume the responsibility. Utilizing a waiver analysis, an innocent litigant has a choice, but applying the prejudice theory, an innocent litigant is left without a choice.

## SUMMARY JUDGMENT DENIAL OF THE FRAUD DEFENSE

In recognition of the nature of the parties involved in this sales transaction and the process of negotiation, payment and subsequent litigation, I also cannot agree with the summary judgment disposition of the fraud defense which arose from this business sale negotiation process. Franke, as the in-town managing partner, with her brother Roll, out-of-town, non-managing partner, undertook to sell the Gillette, Wyoming video rental agency, RV Enterprises. The partnership listed the business with a Gillette real estate agency, Century 21. The realtor then found a prospective customer, Wales, and proceeded with negotiation. Roll, as a partner, after two proposals were presented, agreed to the sale with Wales if a reduced commission could be obtained to provide a desired net price. When the realtor refused, Franke set about structuring a deal to cheat the realtor out of his commission by the introduction of a third party who was her boyfriend (the Australian), Monte G. Schulte, as a straw man purchaser.

My instant objection to the decision of the majority is derived from the resulting fraud that was perpetrated on Wales, which was separate and distinct from the fraud perpetrated on the realtor. The sales documents for the sale to the straw man, Schulte, were obtained by Roll and then redone by Franke, who became the author of the instruments on resale to Wales. Fraud was perpetrated upon Wales as the successor buyer by the double layered sales terms. The first sales agreement, Franke–Roll to Schulte, provided for a large initial payment and a three month balloon payment for the substantial bal-

ance which was clearly not within Wales' payment capacity. This was also why the first proposal to sell to him did not close because of his insufficient financing and lack of credit. The second sales agreement, Schulte to Wales, was different from the first one by providing for payment of the balance of the purchase price on a thirty-six month amortized schedule, which could have been within Wales' capacity to pay. Additionally, security documents between Franke–Roll as the partnership and Schulte were executed and filed though unannounced and unknown to the innocent Wales. Wales was not told about the balloon payment provision in the first agreement, which became his burden even when not included in the second agreement. Consequently, even if Wales met his payment obligations on the second agreement, the one he had executed, the business deal was jeopardized since the balloon payment permitted the original owners to foreclose under the first sales agreement. As realistically could be anticipated and certainly even programmed, it did happen just that way. Despite whatever payment Wales made on an installment contract basis, the original partnership of Franke–Roll demanded a three month balloon payment satisfaction in full which exceeded any payment capacity of Wales.

Recognition of the nature of the parties is intrinsic to the proper resolution in this case, and particularly so since disposition was made on a summary judgment basis. Roll, as brother, had initially funded the establishment of RV Enterprises on borrowed money to provide a business to be operated by his sister, Franke. Lacking profitability, it was later decided by the brother-sister partners to sell. Franke, as manager of the business, was to be the Gillette sales negotiator. During that time, she acquired as her boyfriend—or romantic interest, as her deposition indicates—Monte Schulte. Prospective buyer, Wales, had a cash settlement from a Florida worker's compensation injury claim. Franke set about to separate him from his cash by the sale of RV Enterprises and did just that. The actual existence or involvement of her brother as a partner was essentially undisclosed to Wales during the negotiation process.

Since Roll had the money interest in the business from his bank loan debt in South Dakota, he was significantly involved in the sales decision but never in any direct contact with Wales. Roll did sign the real estate listing agreement and then later signed the first earnest money deposit and sales agreement for a sale to Wales. That earlier proposal did not mature since bank funding was not available to Wales to finance the amount required in excess of his available cash from the worker's compensation settlement.

Lacking bank financing, a second proposal was floated between the parties which did not net Roll's demand for cash after payment of the real estate commission. Franke then, in conjunction with Schulte, set about cheating the realtor out of the commission by a straw man sale so that the initial cash payment desired by her brother, Roll, would be achieved. It is undisputed that fraud was perpetrated by Schulte and Franke, not only on the realtor but also on Wales, which occasions my dissent in analysis of the resulting summary judgment granted against Wales as the buyer. The question at issue is the responsibility of a brother-sister partnership for the fraud committed upon Wales as the buyer of the business when committed by the sister/partner, and the brother/partner essentially got the proceeds.[2]

---

**2.** I do not recognize any actionable claim in Wales' theory that the fraud committed on the realtor extinguishes sales agreement liability. Wales was a knowledgeable participant and that fraud certainly would not absolve the relationships between Wales and Franke–Roll in the result achieved. The fraud perpetrated on Wales was the layered sales agreement whereby the straw man, Schulte, paid less and agreed to an unattainable balloon payment arrangement with filed chattel security exposure. In the second agreement as prepared by Franke–Roll, Wales signed a more favorable agreement with the less favorable terms of the prior agreement undisclosed to him. It is in this fraudulent document preparation and presentation that the partnership responsibility issue is derived. Can a partner and a partnership profit from what a partner fraudulently acquires in a business sale, even if the specific details of the perpetration of

Related to the question presented is the structure of this litigation which in itself was surprising in that Wales did not counterclaim and only filed an affirmative defense. This litigation initiated by Franke–Roll, a Wyoming partnership, d/b/a RV Enterprises against Schulte and Wales prayed for preliminary non-transfer injunction and replevin of the business inventory chattel assets which, in this instance, was essentially the business. This lawsuit was to accommodate recovery for Franke–Roll of the balloon payment balance on the first sales agreement made between the partnership and straw man, Schulte. In answer, Wales pleaded as an affirmative defense that he had been defrauded in his payment of $55,000 cash as a deposit to make the sale. Schulte had picked up around $5,000 cash for his "availability," and then shortly thereafter, broke off his relationship with Franke and departed for Florida or parts otherwise unknown. He was served in the replevin action and defaulted. Perhaps for this reason, or others undisclosed, a cross-claim against him by Wales was also not made.[3]

I have no problem in the citation of the majority to W.S. 17–13–301(b), but consider that the statute does not reach nor contemplate these facts where the partnership and the partner realized the benefit of the fraud in the sale of the business, whether disclosed or not. Although this case is far from carefully pleaded in issue development, I discern that other provisions of the Uniform Partnership Act, now found in Wyoming statutes, should be applied.

An admission or representation made by any partner concerning partnership affairs within the scope of his authority as conferred by this act [§§ 17–13–101 through 17–13–615] is evidence *against the partnership.*

W.S. 17–13–303 (emphasis added).

Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

W.S. 17–13–304.

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

W.S. 17–13–305.

As a result of the long-standing common law standards that predate codification and the Uniform Partnership Act, the principle evolved that I describe as benefit-responsibility.

The imposition of civil liability on an innocent partner for the fraud of his copartner is especially applicable where the innocent partner receives the fruits of the fraudulent conduct. A false representation by one partner, by means of which property is obtained by the firm, will in law be imputed to the other partners to the extent of holding them liable for the debt, where the property remains identifiable, and the claimant can follow

the fraud may only have been known to the managing partner?

**3.** It is not exactly clear from the record, but most if not all of the money which was paid by Wales, except for $5,000 which was retained by Schulte, was delivered to and used by Roll for his business debt reduction. Shortly after the sale, the romantic relationship between Franke and Schulte broke up. Franke had something in the nature of a nervous breakdown, and this litigation followed as an effort by Roll to repossess the video merchandising business. It is my

perception that the real issue of the case in view of the clear fraud perpetrated on Wales is whether the partnership is bound to the better terms of the second sales agreement as layered upon the first Schulte agreement for enticing Wales into parting with his money and entering into the business purchase. In other words, is the fraudulently inserted balloon payment provision enforceable under these circumstances in favor of a partner who may not have participated in the fraud, but received its benefits?

it into the hands of the partnership and recover it.

59A Am.Jur.2d *Partnership* § 670 at 570 (1987) (footnotes omitted). Recognition of the rationale implicit in this principle occurred in one Wyoming case, *Douglas Reservoirs Water Users Association v. Maurer & Garst*, 398 P.2d 74 (Wyo.1965), where the subject of partnership or partner responsibility for a partner's illegal action (theft) was questioned. However, the disconnected service escape from partnership liability found in Douglas Reservoirs Water Users Association, 398 P.2d at 78, has no application here where we have the sale of the partnership assets, in which endeavor the fraud was committed and where also the partnership and the other partner received the gathered fruit.

The benefit-responsibility principle has a strong and firm history as anchored in an 1885 decision of the United States Supreme Court, *Strang v. Bradner*, 114 U.S. 555, 561, 5 S.Ct. 1038, 1041, 29 L.Ed. 248 (1885), where it is stated:

The only other question to be determined is, whether the defendants, John B. Holland and Joseph Holland, can be held liable for the false and fraudulent representations of their partner, it being conceded that they were not made by their direction nor with their knowledge. Whether this action be regarded as one to recover damages for the deceit practised upon the plaintiffs, or as one to recover the amount of a debt created by fraud upon the part of Strang, we are of opinion that his fraud is to be imputed, for the purposes of the action, to all the members of his firm. The transaction between him and the plaintiffs is to be deemed a partnership transaction, because, in addition to his representation that the notes were for the benefit of his firm, he had, by virtue of his agency for the partnership, and as between the firm and those dealing with it in good faith, authority to negotiate for promissory notes and other securities for its use. Each partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge. *This is especially so when, as in the case before us, the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business.* [Emphasis added.]

A real estate transaction of similar rapport is found in *Gannon, Goulding & Thies v. Hausaman*, 42 Okla. 41, 140 P. 407, 410 (1914) (quoting *Stanhope v. Swafford*, 80 Iowa 45, 45 N.W. 403 (1890) and 14 A. & E. Ency. L. (2d Ed.) 156, respectively), where that court specified:

"Where one partner, while acting for the firm, makes an exchange of lands by means of false representations, the other partner is liable for the fraud, though he personally takes no part in the transaction, and is ignorant of the fraud." * * * "One is also responsible for the fraud of a person who has assumed to act for him without authority, if he ratifies his act by accepting the benefit of it or otherwise."

A considerable volume of cases can be found in general reference to this subject in 6 Uniform Partnership Act (U.L.A.) § 13 (1969) as relating to the model code sections. For example, the fruit or benefit of the fraudulent conduct was dispositive for decision in *Carolina Bagging Co. v. Byrd*, 185 N.C. 136, 116 S.E. 90 (1923). Partnership property sale fraud was similarly presented in *Siebold v. Berdine*, 61 Cal. App. 158, 214 P. 655 (1923). See also *Griffin v. Bergeda*, 152 Tenn. 512, 279 S.W. 385 (1926). Succinctly stated in *A. Sam & Sons Produce Co. v. Campese*, 14 A.D.2d 487, 217 N.Y.S.2d 275, 277 (1961), "[f]raud by one partner whereby money or property is gained by the partnership renders all

partners civilly liable despite a discharge in bankruptcy."

Another example is *Zemelman v. Boston Ins. Co.*, 84 Cal.Rptr. 206, 207, 4 Cal. App.3d 15 (1970) (quoting from *Stewart v. Levy*, 36 Cal. 159, 165 (1868)) involving an insurance proceeds claim. That court related:

"All the partners will be bound by the fraud of one of the partners in contracts relating to the partnership made with innocent third parties. That is to say, all are responsible for the injury occasioned by the fraud, * * * whether they were cognizant of the fraud or not. The rule is the same as it is in respect to the responsibility of the principal for the fraud of his agent, while acting within the scope of his authority; and, indeed, a partner becomes liable for the fraud of his co-partner, because of the relation each bears to the other of agent in the partnership business."

Since this decision is rooted in summary judgment, the burden is on the partnership and partners to deny apparent authority of the fraudulent conduct. *Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751 (Tex.1976). In this case, partner/Franke committed fraud on the buyer/Wales of partnership property so that the partnership and other partner, Roll, received the monetary benefit. Unquestionably, as reflected in this record, the sale was authorized by each partner and undertaken in the partnership interest.

I would reverse the countervailing summary judgment which leaves all the benefits of the fraud with the defrauding parties. The case should be·tried on its merits to determine whether Wales has a proper defense to the repossession of the business assets which he purchased on the basis of the fraud committed on him by the partnership in arranging the sale.