**DOUGLAS RESERVOIRS WATER USERS ASSOCIATION, A. C. Ayers, Ellen Conlogue and Clifford J. Peterson, Appellants (Defendants below),**

v.

**Doris GARST, Executrix of the Estate of Joseph Garst, Deceased (Plaintiff below), Lenore J. Maurer, Executrix of the Estate of R. C. Maurer, Deceased (Defendant below), and American Surety Company of New York (Intervenor below), Appellees.**

No. 3713.

Supreme Court of Wyoming.

March 3, 1969.

Alfred G. Kaufman, Jr., Joseph B. Sullivan, Douglas, for appellants.

J. Patrick Hand, of Burley & Hand, Douglas, Leonard E. Lang, W. J. Wehrli, Casper, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Joseph Garst, now deceased, brought an action during his lifetime for a declaratory judgment. In the action, Garst sought to obtain a settlement of partnership accounts between himself and his deceased partner in the practice of law, R. C. Maurer.

The appellants, all of whom are general creditors of Maurer, intervened and were made defendants along with the executrix of the Maurer estate. American Surety Company of New York also intervened. Upon the death of Garst, his executrix was substituted as plaintiff.

In Garst's complaint, he alleged the partners were entitled to equal shares in the partnership; that after the death of Maurer it had been discovered Maurer had overdrawn the sum of $27,264.35 above his entitlement. As near as we can tell from the findings and judgment of the district court, it disallowed $3,410 in the sums which Garst claimed Maurer had overdrawn. Two items in this category related to the Roby L. Burkett estate and totaled $1,660. Another item was $1,750 listed as used in the purchase of an accounting office.

As disclosed by the evidence and as appears in our opinion in Douglas Reservoirs Water Users Association v. Maurer & Garst, Wyo., 398 P.2d 74, 76, the money withdrawn by Maurer from the Roby L. Burkett estate was replaced by money withdrawn by Maurer from the checking account of Douglas Reservoirs Water Users Association. As a consequence, this transaction did not result in any loss to the partnership of Maurer and Garst, or in any profit to Maurer at the expense of such partnership.

Concerning the item of $1,750 which Maurer used for the purchase of an accounting office, the trial court apparently concluded from the evidence that the purchase was a partnership enterprise; and that there had been no wrongful withdrawal of partnership funds by Maurer.

The difference between the $27,264.35 claimed by Garst and the $3,410 which the district court disallowed left a balance of $23,854.35. This was held to be the amount of profits withdrawn by Maurer in excess of Garst's withdrawals.

Gross assets of the partnership were found to be as follows:

| | |
|---|---|
| Cash | $14,447.80 |
| Due from J. Patrick Hand for furniture and equipment | 7,720.00 |
| Profits held by R. C. Maurer | 23,854.35 |
| Accounts receivable | No value |
| Total | $46,022.15 |

However, the trial court held the partnership to be indebted to American Surety Company of New York, intervenor, in the sum of $4,478.10. Also, the partnership was charged with a fee of $3,000 as compensation for services rendered by Garst and his estate in winding up partnership affairs. When these two items were deducted from the gross assets, it left a net of $38,544.05, or $19,272.02 for each partner.

On that basis, Maurer had received $4,582.33 more than he was entitled to; and Garst, when all available assets were applied, would be short $4,582.33. The district court therefore gave judgment in the amount of $4,582.33 in favor of the Garst estate and against the Maurer estate.

Counsel for the Garst estate has moved to dismiss the appeal of general creditors of Maurer on the ground that a complete record on appeal was not timely filed. A partial record on appeal was filed within the time permitted by Rule 73(g), W.R. C.P., but this partial record did not contain the transcript of testimony nor the exhibits offered in evidence. Those missing parts were filed in this court 30 days after the maximum time had expired for filing the record on appeal.

Rule 75(k), W.R.C.P., provides, if prior to the time the complete record on appeal is settled and certified, a party desires to docket the appeal in order, among other things, to make a motion in the supreme court for an extension of time within which to complete the record, the clerk of the district court at the request of such party shall certify and transmit to the supreme court a copy of such portion of the record as is needed for that purpose.

Appellants in this case had sufficient record in the supreme court so that a motion for extension of time within which to complete the record could have been made. Appellants failed, however, to take advantage of the opportunity to make such a motion.

Moreover, Rule 73(g) states the supreme court "on proper application" may permit the record on appeal to be filed and docketed after the time limited for such where "without fault" of the appealing party the necessary transcript of evidence was not made available to the appellant within the time limited for filing and docketing of the record on appeal, if the appealing party produces "written evidence" that concurrently with the filing and serving of the notice of appeal such appellant had ordered from and arranged with the court reporter the payment for the transcript of those portions of the evidence deemed necessary for the appeal. Appellants have wholly failed to make application for relief under this portion of Rule 73(g), and they have made no effort to establish that the necessary transcript of evidence had not been made available and that appellants were without fault and that they had made timely arrangements for the transcript and for payment therefor.

It is true the notice of appeal stated appellants had concurrently ordered and arranged for a transcript of the evidence for the appeal. It did not state appellants had arranged for the "payment" of a transcript. Also, appellants filed a memorandum in opposition to the motion to dismiss. They did not file a memorandum of points and authorities as contemplated in Rule 6, Wyoming Supreme Court Rules; and the memorandum filed was not filed within ten days after service of the motion to dismiss, as contemplated by Rule 6. The memorandum filed did state:

> "The transcript of the testimony by the Court Reporter will be filed just as soon as it is completed. He *apparently* is having difficulty with exhibits, *according to the District Court's office.*" (Emphasis ours.)

Obviously, the statements referred to in the notice of appeal and in the memorandum in opposition to dismissal of the appeal fail to constitute the kind of written evidence required by Rule 73(g) with respect to the transcript of evidence. Affidavits of counsel and of the court reporter would have been more in keeping with the requirement—if appellants had within reasonable time made "proper application" for the supreme court to permit the balance of the record to be filed and docketed after the time therefor had expired.

The motion of the Garst estate to dismiss the appeal was heard at the same time the case was heard on the merits. This has enabled us to see the whole of the case, and we are convinced none of the individual appellants will have reason to complain that an injustice is done to him by a dismissal of the appeal. Our conclusion is that the appeal should be dismissed for the failure of appellants to timely complete the record; or to timely move for an extension of time to do so under Rule 75(k); or to make proper application under Rule 73(g) for permission to file the absent portions of the record out of time.

Although it is not at all necessary for us to do so, we have chosen to indicate, with a brief discussion of appellants' assignments of error, that even a consideration of the case on the merits would result in no major departure from the judgment of the trial court.

A question was raised with respect to the estate of O. D. Ferguson, Jr. R. C. Maurer and Joseph Garst were coexecutors of that estate. A bond was given in the estate matter, executed by R. C. Maurer and Joseph Garst, as principal, and by American Surety Company of New York, as surety. The instrument recited the parties were "jointly and severally" bound. Maurer and Garst, as partners, were attorneys for the estate. As coexecutors, they were separate individuals.

However, notwithstanding their separate statuses as coexecutors, they gave a single or joint bond rather than separate bonds. In Annotation 65 A.L.R.2d 1019, 1081, § 25 (a), it is stated that the prevailing authority is to the effect that executors or administrators executing a joint bond for the faithful performance of their duties are liable for the defaults or wrongful acts of each other. See also page 1087, § 25(b), of the same annotation; and 34 C.J.S. Executors and Administrators § 945, p. 1166; and 31 Am.Jur.2d, Executors and Administrators, § 639, p. 272.

■ Our review of the authorities on this matter, including the many cases referred to in the A.L.R. annotation, convinces us the prevailing authority is indeed to the effect that executors or administrators who execute a joint bond for the faithful performance of their duties are liable for the defaults or wrongful acts of each other. And this is true whether the action is on the joint bond by a beneficiary of the estate or by the surety on the bond for indemnity.

In the case before us, parties agree Maurer misappropriated some $17,900 from the Ferguson estate. Garst reimbursed some of the beneficiaries to the extent of $10,-416.90 with funds from the Maurer and Garst partnership; other beneficiaries sued and collected $4,478.10 from the surety company; and still other beneficiaries did not pursue their claims.

■■ The question raised is (a) whether Garst was entitled to charge the partnership with the $10,415.90 he reimbursed, and (b) whether the court correctly found the partnership indebted to the surety company in the sum of $4,478.10. Based on the rule we have just stated and adopted, the answer could only be in the affirmative as to both parts of this question.

Although counsel for appellants questions the allowance of $3,000 as compensation for services rendered by Garst and his estate in winding up partnership affairs, no showing has been made that the allowance is unreasonable or otherwise improper. Section 17–212(f), W.S.1957, specifically states that a surviving partner is entitled to reasonable compensation for his services in winding up partnership affairs.

■ The testimony in this case indicates both Maurer and Garst had certain outside interests, receiving separate and unrelated salaries for some of these outside activities. In that category, it appears Garst received a salary of $3,600 as a director and officer of Lance Creek Royalties Company. Although it is suggested, without evidence or logic to support such suggestion, that this $3,600 should have been turned into the partnership, the court was justified in considering the payment salary not related to the practice of law. That is especially true in view of the fact that the evidence shows the law firm received a separate retainer annually for legal services.

Counsel for appellants also questions the credit allowed to Maurer or his estate in connection with probate fees earned in several estates. Included are the Frank G. Thompson Estate; the Sam Joss Estate; the Anna Johnson Estate; and the Carl Manning Estate.

■ In each of these estates, it appears from the evidence that the probate court

responsible for the estate fixed attorney fees—adjusting in each case the amount earned by Maurer and Garst and the amount earned by attorneys who carried on the probate after Maurer's death. Without attempting to discuss the exact situation in each estate, we will say merely that we reviewed the record as it pertains to each, and we found no substantial error or unjust apportionment in any of the cases referred to.

We have previously mentioned an item of $1,750 pertaining to purchase of an accounting office. It appears this was resolved in favor of appellants and against the executrix of the Garst estate. Another item in the amount of $1,002.22 has to do with a withdrawal of that sum by Maurer from partnership funds to reimburse a tax accounting loss to a client.

The testimony pertaining to tax returns and accounting work indicates law clients of Maurer and Garst were involved; that the work was originally done "At the office of Maurer and Garst"; that there first existed an arrangement whereby the accountants would do tax work for Maurer and Garst, advising Maurer and Garst of the charges for such work; and that Maurer and Garst would bill their clients for legal services and the tax services and then pay the accountants their money.

■ If the court was correct in considering the purchase of an accounting office a partnership activity, it probably should have considered that the reimbursement of $1,002.22 to a client in connection with a tax return was a partnership activity. There would be reason to say both items were proper withdrawals made by Maurer from partnership funds.

However, even if the court was wrong about the $1,002.22 item, it would have reduced the judgment of the Garst estate against the Maurer estate only to the extent of $501.11. As we understand the record before us, the Maurer estate is insolvent to the extent that creditors do not stand to recover any substantial portion of their claims without a substantial change in favor of the Maurer estate in the partnership accounting. A difference of $501.11 would not make any material difference to any party.

In the light of what we have said, it is entirely proper for the appeal in this case to be dismissed.

The motion to dismiss is granted, and appellants' appeal is dismissed.